Hahn Loeser & Parks LLP
Gabe P. Wright (SBN 208647)
Kyle T. Overs (SBN 286158)
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Telephone: 619.810.4300
Facsimile: 619.810.4301
gwright@hahnlaw.com
kovers@hahnlaw.com

Attorneys for Oakmont Senior Living LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD LOLLOCK, by and through his Guardian ad Litem, KATHLEEN LOLLOCK; ZAREEN KHAN as Special Administrator for the Estate of Abdulwafi Khan; FRANK PEARSON; JO ELLA NASHADKA; and JANE BURTON-WHITAKER; on their own behalves, and on behalf of others similarly situated, | Case No. |
| | **NOTICE OF REMOVAL** |
| | (Formerly Superior Court of California for the County of Alameda Case No. RG17875110) |
| Plaintiff, | |
| v. | Judge: |
| OAKMONT SENIOR LIVING, LLC, and DOES 1-100, | |
| Defendants. | |

**PLEASE TAKE NOTICE THAT,** pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Oakmont Senior Living LLC hereby removes this action from the Superior Court of California for the County of Alameda to the United States District Court for the Northern District of California.

## I. BACKGROUND ON INITIAL SUPERIOR COURT FILINGS

1. On September 13, 2017, Plaintiffs Donald Lollock, by and through his Guardian ad Litem, Kathleen Lollock; Zareen Khan as Special Administrator for the Estate of Abdulwafi Khan; Frank Pearson; Jo Ella Nashadka; and Jane Burton-Whitaker ("Plaintiffs") filed in the Superior Court of California for the County of Alameda a civil action entitled *Donald Lollock, et al. v. Oakmont Senior Living, LLC*, Case No. RG17875110 ("the State Court Proceedings"). A copy of

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 • Fax: (619) 810-4301

the Complaint, as filed, is attached hereto as Exhibit 1.

2.      The Complaint asserts three causes of action: (a) violation of the Consumers Legal Remedies Act; (b) unlawful, unfair, and fraudulent business practices, and (c) elder financial abuse.

3.      Oakmont Senior Living LLC ("Oakmont") was served with Summons and the Complaint on September 20, 2017.

4.      To the best of Oakmont's knowledge, no Doe Defendant has been served with Summons or the Complaint as of the time of this removal.  Furthermore, the consent of unknown Doe Defendants is not required for removal.  (*United Computer Sys. v. AT&T Info. Sys.*, 298 F.3d 756, 762 (9th Cir. 2002) ["Although the usual rule is that all defendants in an action in a state court must join in a petition for removal, the 'rule of unanimity' does not apply to 'nominal, unknown, or fraudulently joined parties.'"] (citations omitted); *Green v. Am. Online (AOL)*, 318 F.3d 465, 470 (3d Cir. 2003) [disregarding the general rule that all defendants must consent to removal where the non-joining defendants are doe defendants].)  As a result, Oakmont is entitled to remove the State Court Proceedings without obtaining the consent of any of the Doe Defendants.

## II.  REMOVAL PURSUANT TO FEDERAL DIVERSITY JURISDICTION

5.      The State Court Proceedings may be removed to this Court in accordance with 28 U.S.C. § 1441 because this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) on the basis of diversity.  Specifically, the State Court Proceedings are a class action in which the matter in controversy exceeds the sum or value of $5,000,0000, the number of members of the proposed class exceeds 100 persons, and at least one member of the proposed class of Plaintiffs is a citizen of a State different from the Defendant Oakmont.

### A.  Class Action With A Proposed Class Exceeding 100 Persons

6.      28 U.S.C. § 1332(d)(1)(B) defines the term "class action" for the purpose of federal court jurisdiction to mean "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  Plaintiffs brought the State Court Proceedings as a proposed class action pursuant to California Code of Civil Procedure § 382, which authorizes class actions in California state courts.  (Exhibit 1, ¶¶ 1, 88.)  Plaintiffs allege that

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

the proposed class exceeds 4,000 individuals.  (*Id.* at ¶¶ 89, 92.)

**B.  Amount In Controversy**

7.  "In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  (28 U.S.C. § 1332(d)(6).)  "Generally, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'"  (*Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-289 (1938)).)  Here, Plaintiffs allege that each class member is "entitled to statutory damages of up to $5,000 pursuant to California Civil Code section 1780(b)."[1]  (Exhibit 1, ¶ 117.)  Given the proposed class of 4,000 individuals, the amount in controversy based on California Civil Code § 1780 (b) alone is $20,000,000 ($5,000 X 4,000 proposed class members).  But Plaintiffs also seek to treble the $20,000,000 in alleged damages pursuant to California Civil Code section 3345, as well as seeking an award of punitive damages—both of which put the amount in controversy substantially above 28 U.S.C. 1332(d)(2)'s $5,000,000 threshold.  (*Id.* at 118.)

8.  Accordingly, the amount in controversy in this litigation is in excess of $5,000,000.

**C.  Diversity Of Citizenship**

9.  "Citizenship of the members of the proposed plaintiff classes shall be determined for purposes of [diversity jurisdiction] as of the date of filing of the complaint or amended complaint[.]" (28 U.S.C. § 1332 (d)(7).)  Plaintiffs filed the State Court Proceedings on September 13, 2017.

10.  Oakmont was formed in California in November, 2000, and has its principal place of business in Windsor, California.  (Declaration of Joe Lin, ¶ 2; Exhibit 3: Oakmont Senior Living

---

[1] California Civil Code § 1780(a) provides that a consumer who suffers damages is entitled to restitution, an injunction, punitive damages, and actual damages.  California Civil Code § 1780(b) provides that a consumer who is a senior citizen or disabled person may additionally seek $5,000 based on economic damage resulting from the defendant's conduct.  Plaintiffs bring a claim for elder abuse based on the allegation that Plaintiffs and the putative class members were at all relevant times elders and dependent adults as defined by the California Welfare and Institutions Code. (Exhibit 1, ¶ 134; Cal. Civ. Code §§ 1761(f) [defining a "senior citizen" as "a person who is 65 years of age or older"], 1761(g) [defining a "disabled person" as "a person who has a physical or mental impairment that substantially limits one or more major life activities"]; Cal. W&I Code §§ 15610.27 [defining "elder" as a person "65 years of age or older"], 15610.23 [defining "dependent adult" as a person "who has physical or mental limitations that restrict his or her ability to carry out normal activities"].)  Thus, Plaintiffs claim that all proposed class members are entitled to the $5,000 in additional statutory damages under California Civil Code § 1780(b).

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
Tel: (619) 810-4300 - Fax: (619) 810-4301

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

1   LLC's 2016 California Secretary of State Statement of Information.)  As "an unincorporated

2   association shall be deemed to be a citizen of the State where it has its principal place of business

3   and the State under whose laws it is organized," Oakmont is a California citizen.  (28 U.S.C. §

4   1332(d)(10); *Marroquin v. Fargo*, 2011 U.S. Dist. LEXIS 10510, at *4 (S.D. Cal. 2011) [finding

5   an LLC to be an "unincorporated association" for the purpose of diversity jurisdiction under 28

6   U.S.C. § 1332(d)]; *Roling v. E\*Trade Sec., LLC*, 756 F. Supp. 2d 1179, 1184-1185 (N.D. Cal.

7   2010) [same].)

8       11.   Plaintiffs' proposed class consists of "the named Plaintiffs and all similarly situated

9   persons, and/or the successors-in-interest to the estates of similarly situated persons, who resided or

10  reside at one of the California assisted living facilities owned and/or operated by Oakmont under

11  the Oakmont name from September 13, 2013, through the present (the 'Class Period'), and who

12  contracted with Oakmont for services for which Oakmont was paid money."  (Exhibit 1, ¶ 89.)

13  Oakmont's records for individuals that fit the proposed class definition reveal that many of the

14  proposed class members did not reside in California as of the date of filing of the State Court

15  Proceedings, but instead were domiciled in many different states, including Colorado, Connecticut,

16  Kansas, Louisiana, Massachusetts, Maine, Michigan, Nevada, New Hampshire, New Jersey,

17  Oklahoma, Oregon, Pennsylvania, Texas, Virginia, and Washington.  (Declaration of Nicole

18  Wesner, ¶¶ 2-3.)  As such, numerous members of the proposed class of Plaintiffs are citizens of a

19  State different from Oakmont.

20      12.   This is a civil action over which this Court has original subject matter jurisdiction

21  pursuant to 28 U.S.C. § 1332(d) since the State Court Proceedings are a class action in which the

22  matter in controversy exceeds the sum or value of $5,000,0000, the number of members of the

23  proposed class exceeds 100 persons, and at least one member of the class of Plaintiffs is a citizen

24  of a State different from Oakmont.  Consequently, this action is removable pursuant to 28 U.S.C. §

25  1441.

26  **III. ALL PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN**

27          **SATISFIED**

28      13.   Oakmont received service of Summons and the Complaint on September 20, 2017.

1    Removal is therefore timely in accordance with 28 U.S.C. § 1446(b).

2        14.    Pursuant to the requirements of 28 U.S.C. § 1446(a), Oakmont has attached to this

3    Notice of Removal true and correct copies of all the process, pleadings, orders, and documents

4    from the State Court Proceedings that, to the best of Oakmont's knowledge, have been filed in the

5    State Court Proceedings.  Exhibit 1 is a true and correct copy of the Complaint from the State

6    Court Proceedings.  Exhibit 2 contains true and correct copies of all other process, pleadings,

7    orders, and documents from the State Court Proceedings.

8        15.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446(a) because

9    the United States District Court for the Northern District of California is the federal district

10   embracing the Superior Court of California for the County of Alameda, where the State Court

11   Proceedings were originally filed.

12       16.    Intradistrict Assignment: Pursuant to Local Rule 3-2(c)-(d) this action should be

13   assigned to the San Francisco Division or the Oakland Division of the Northern District of

14   California as the action arose in Alameda and/or Sonoma Counties.

15       17.    Pursuant to 28 U.S.C. § 1446(b), Oakmont will give written notice of the filing of

16   this Notice of Removal to all adverse parties and will file a copy of this Notice of Removal with

17   the Clerk of Court for the Superior Court of California for the County of Alameda.

18       WHEREFORE, Oakmont hereby gives notice that Civil Action No. RG17875110, which

19   was previously pending in the Superior Court of California for the County of Alameda, is hereby

20   removed to the Northern District of California.  By this Notice of Removal, Oakmont does not

21   waive any objections it may have as to service, jurisdiction, venue, or any other defense or

22   objection it may have to this action.  Oakmont intends no admission of fact, law, or liability by this

23   Notice of Removal and expressly reserves all defenses, motions, and/or pleas.

24   Dated: October 16, 2017                    HAHN LOESER & PARKS LLP

25

26                                       By:    /s/ Gabe P. Wright
                                               Gabe P. Wright
27                                             Kyle T. Overs
                                               Attorneys for Oakmont Senior Living LLC
28

Hahn Loeser & Parks, LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA  92101
Tel: (619) 810-4300 · Fax: (619) 810-4301

# EXHIBIT 1

1  Kathryn A. Stebner, State Bar No. 121088
2  Kelly Knapp, State Bar No. 252013
   George Kawamoto, State Bar No. 280358
   **STEBNER AND ASSOCIATES**
3  870 Market Street, Suite 1212
4  San Francisco, CA  94102
   Tel: (415) 362-9800
5  Fax:  (415) 362-9801

6  Guy B. Wallace, State Bar No. 176151
   Sarah Colby, State Bar No. 194475
   Jennifer A. Uhrowczik, State Bar No. 302212
7  **SCHNEIDER WALLACE COTTRELL**
   **KONECKY WOTKYNS, LLP**
8  2000 Powell Street, Suite 1400
   Emeryville, CA 94608
9  Tel:    (415) 421-7100
   Fax:    (415) 421-7105
10

11 Christopher J. Healey, State Bar No. 105798
   **DENTONS US LLP**
12 600 West Broadway, Suite 2600
   San Diego, CA  92101-3372
13 Tel: (619) 235-3491
   Fax: (619) 645-5328

14 [Additional Counsel listed on signatur page]

15 *Attorneys for Plaintiffs and the Proposed Class*

16        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

17                   **COUNTY OF ALAMEDA**

18 Donald Lollock, by and through his Guardian         CASE NO.  R G 17 875110
19 ad Litem, Kathleen Lollock; Zareen Khan as
   Special Administrator for the Estate of            **CLASS ACTION COMPLAINT FOR:**
20 Abdulwafi Khan; Frank Pearson; Jo Ella
   Nashadka; and Jane Burton-Whitaker; on            1.  VIOLATION OF THE CONSUMERS
21 their own behalves, and on behalf of others            LEGAL REMEDIES ACT (Civ. Code §
   similarly situated,                                    1750 *et seq.*)
22                                                   2.  UNLAWFUL, UNFAIR AND
               Plaintiffs,                               FRAUDULENT BUSINESS PRACTICES
23                                                       (B&P Code § 17200 *et seq.*)
   vs.                                              3.  ELDER FINANCIAL ABUSE (W&I Code
24                                                      § 15610.30)
   Oakmont Senior Living, LLC, and Does 1 -
25 100,                                             **JURY TRIAL DEMANDED**

26             Defendants.

27

28

                                            1
                          CLASS ACTION COMPLAINT

ENDORSED
FILED
ALAMEDA COUNTY

SEP 1 3 2017

By SUE PESKO

BY FAX

**INTRODUCTION**

1.     Plaintiffs Donald Lollock, Zareen Khan, Frank Pearson, Jo Ella Nashadka, and Jane Burton-Whitaker (collectively "Plaintiffs") and the proposed Class bring this action for injunctive relief and damages to stop the unlawful and fraudulent practices of Oakmont Senior Living, LLC ("Oakmont" or "Defendant").

2.     Defendant has engaged in a scheme to defraud seniors, persons with disabilities, and their family members at its assisted living facilities in California by falsely representing to all residents in its admission contracts that each resident will be provided the care services (through facility staff) that the resident needs as determined by the resident assessment conducted by facility personnel. This is false and misleading because the results generated by Oakmont's resident assessment system are not used to set staffing at each facility. Instead, as a matter of corporate policy, Oakmont allocates expenditures for staffing at each facility based on pre-determined and static budgets designed to maximize revenue. As a result, Oakmont's facilities do not have sufficient numbers of trained staff to provide promised care services to its residents. Oakmont conceals and fails to disclose this material fact to current and prospective residents.

3.     In its form admission agreements, Oakmont uniformly represents to each new resident that (a) each resident will receive the care that he/she requires; (b) the facility's professional staff will determine the care required for each resident through the resident assessment process; and (c) the amount of care needed by the resident will be translated into a specific number of care points for which the resident will be charged on a monthly basis. The reasonable consumer understands these representations to mean that, as a matter of policy and practice, the budgets for staffing at each facility are related to the aggregated care points generated from its resident assessment system and Oakmont will, accordingly, ensure each facility has sufficient numbers of trained staff to deliver to all facility residents the amount and type of care Oakmont has identified as needed and promised to provide.

4.     Oakmont's misrepresentations, misleading statements, and omissions about its budgets driven primarily by desired profit margins profit as opposed to the aggregate care needs of

2
CLASS ACTION COMPLAINT

its residents are material to the reasonable consumer.  Seniors and/or their family members choose an *assisted* living facility based on the expectation that they will receive the quantity and quality of care that they need.  A system or policy that budgets staffing expenditures based on the overall needs of residents as quantified through aggregation of current residents' regular comprehensive resident assessments is likely to provide such care at the outset and on an ongoing basis.  A system or policy that budgets staffing expenditures based primarily on desired profit margins results in facilities that do not have sufficient numbers of trained staff to meet the needs identified in residents' assessments and precludes Oakmont from providing all promised care to its residents.  It is therefore a matter of fundamental importance to the reasonable consumer to know that Oakmont does not and has no intention of using its resident assessment system to budget sufficient expenditures for staffing such that residents receive the services for which they are being charged.

5.      Through its representations and nondisclosures, Oakmont dupes residents and family members into paying significant amounts of money in the form of move-in fees, initial monthly payments, and other non-refundable fees to enter the facility.  Oakmont's failure to use the results generated by the resident assessment system in determining its budgets for staffing at each facility places all Oakmont residents at an unnecessary risk of harm.  That risk is particularly acute, given the vulnerable nature of the targeted population of seniors and residents with disabilities.

6.      Oakmont's representations in its form contract of its comprehensive resident assessments and corresponding care fees contributes to its competitiveness in the marketplace of assisted living facilities and is a factor in its pricing structure.  Its purported use of such a system to accurately assess the needs of residents and provide sufficient numbers of trained staff to meet those needs enables it to charge more for residency and services at its facilities than it otherwise could.  Residents pay a premium for a system that is represented by Oakmont to provide comprehensive resident needs assessments and the trained staff necessary to provide the promised care.  In actuality, Oakmont does not use the resident assessments to determine facility staffing.

7.      If Plaintiffs had known the true facts about Oakmont's corporate policy of using predetermined and static budgets for staffing at each facility that have no relationship to its resident assessment system and personal care points generated by it, they would not have agreed to enter Oakmont or paid Oakmont significant amounts of money in new resident fees and monthly charges.  If the putative class members had known the true facts about Oakmont's corporate policy of using predetermined and static budgets for staffing at each facility  that have no relationship to its resident assessment system and personal care points generated by it, they would in all likelihood not have agreed to enter Oakmont or paid Oakmont significant amounts of money in new resident fees and monthly charges.  As a result of Oakmont's failure to consider resident assessments in setting the budgets at its facilities, the named Plaintiffs and putative class members did not or have not received, and/or are subjected to a substantial risk that they will not receive in the future, the care that Oakmont has promised to provide in their admission contracts.

8.      This action seeks to require Oakmont to cease and desist its ongoing violations of law.  In addition, Plaintiffs seek an order requiring Oakmont to disclose to prospective and current residents, their family members, and/or responsible parties that its resident assessment system or the aggregated results generated by that system have no relationship to the budget for staffing at each facility.  Plaintiffs further seek an order prohibiting Oakmont from charging fees based on care points that correspond to the amount of staff time Oakmont represents is necessary to provide the required services, unless and until Oakmont uses those numbers in setting and providing staffing levels at its facilities.   In addition to injunctive relief, this action seeks class wide damages based on Defendant's misrepresentations and misleading statements and material omissions alleged herein.  This action does not seek recovery for personal injuries, emotional distress, or bodily harm that may have been caused by Defendant's conduct alleged herein.

## PARTIES

**Plaintiffs**

9.      Plaintiff Donald Lollock was a resident of Oakmont of Villa Capri in Santa Rosa, California from approximately June 2013 to September 2016.  He is currently a resident at another assisted living facility with no connection to Defendant.  At all times relevant to this complaint,

4

1 | Donald Lollock was an elder as defined under California Welfare & Institutions Code section
2 | 15610.27 and a senior citizen as defined under California Civil Code section 1761(f). Kathleen
3 | Lollock is his wife and has been his durable power of attorney since 2004. Simultaneous with the
4 | filing of this complaint, Mrs. Lollock has filed a motion for appointment as her husband's
5 | guardian ad litem for the purposes of prosecuting this action. Donald Lollock is and was at all
6 | times herein mentioned a resident of the State of California. He brings this action on behalf of
7 | himself and all others similarly situated.

8 |      10.    Plaintiff Zareen Khan is the daughter of decedent Abdulwafi Khan, a former
9 | resident of Oakmont of Mariner Point, in Alameda, California from October 30, 2015 to
10 | December 11, 2015. On August 28, 2017, Ms. Khan filed a petition for special administration of
11 | the Estate of Abdulwafi Khan for the purpose of prosecuting this action. At all times relevant to
12 | this complaint, Abdulwafi Khan was an elder as defined under California Welfare & Institutions
13 | Code section 15610.27 and a senior citizen as defined under California Civil Code section 1761(f).
14 | Abdulwafi Khan was at all times herein mentioned a resident of the State of California. Plaintiff
15 | Zareen Khan brings this action on behalf of decedent Abdulwafi Khan and all others similarly
16 | situated.

17 |      11.    Plaintiff Frank Pearson is a current resident of Oakmont of Mariner Point in
18 | Alameda, California who moved into the facility on June 9, 2015. At all times relevant to this
19 | complaint, Mr. Pearson is and was an elder as defined under California Welfare & Institutions
20 | Code section 15610.27 and a senior citizen as defined under California Civil Code section 1761(f).
21 | Frank Pearson is and was at all times herein mentioned a resident of the State of California. He
22 | brings this action on behalf of himself and all others similarly situated.

23 |      12.    Plaintiff Jo Ella Nashadka is a current resident of Oakmont of Mariner Point in
24 | Alameda, California who moved into the facility in June 2015. At all times relevant to this
25 | complaint, Ms. Nashadka is and was an elder as defined under California Welfare & Institutions
26 | Code section 15610.27 and a senior citizen as defined under California Civil Code section 1761(f).
27 |
28 |

1  Jo Ella Nashadka is and was at all times herein mentioned a resident of the State of California.

2  She brings this action on behalf of herself and all others similarly situated.

3      13.    Plaintiff Joan Burton-Whitaker is a former resident of Oakmont of Mariner Point in

4  Alameda, California who resided at the facility from February 16, 2016 until June 15, 2017.  At all

5  times relevant to this complaint, Ms. Burton-Whitaker is and was an elder as defined under

6  California Welfare and Institutions Code section 15610.27 and a senior citizen as defined under

7  California Civil Code section 1761(f).  Joan Burton-Whitaker is and was at all times herein

8  mentioned a resident of the State of California.  She brings this action on behalf of herself and all

9  others similarly situated.

10      **Defendant**

11      14.    Defendant is a California limited liability company with its principal place of

12  business in Windsor, California.  On information and belief, William P. Gallaher is one of its

13  members and is a resident of Sonoma County in California.

14      15.    Oakmont owns and operates all of the real estate and buildings, and it holds the

15  licenses for approximately twenty three (23) assisted living facilities in California under the

16  Oakmont name.

17      16.    The true names and capacities, whether individual, corporate, associate, or

18  otherwise, of the Defendants designated herein as Does 1 through 100, inclusive, are presently

19  unknown to Plaintiffs and thus sued by such fictitious names.  On information and belief, each of

20  the Defendants designated herein as "Doe" is legally responsible for the events and actions alleged

21  herein, and proximately caused or contributed to the injuries and damages as hereinafter described.

22  Plaintiffs will seek leave to amend this Complaint, in order to show the true names and capacities

23  of such parties, when the same has been ascertained.

24      **JURISDICTION AND VENUE**

25      17.    This Court has jurisdiction over all causes of action asserted herein.  Defendant is a

26  resident of California.  It has sufficient minimum contacts in California or otherwise intentionally

27  prevails itself of the California market through ownership and management of 23 assisted living

28

1  facilities located in California, derivation of substantial revenues from California, and other

2  activities, so as to render the exercise of jurisdiction over Defendant by the California courts

3  consistent with traditional notions of fair play and substantial justice.

4      18.    Venue is proper in Alameda County under Code of Civil Procedure section 395(a),

5  Business & Professions Code section 17203, and Civil Code section 1780, based on the facts,

6  without limitation, that:  This Court is a court of competent jurisdiction; Defendant conducts

7  substantial business in this county, including but not limited to the management and ownership of

8  Oakmont of Mariner Point and Oakmont of Cardinal Point, a portion of Defendant's liability arose

9  in this county; and the acts upon which this action is based occurred in part in this county.

10             **GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS**

11      19.    Assisted living facilities, also called Residential Care Facilities for the Elderly

12  ("RCFEs"), offer room, board, and daily assistance for seniors in certain activities of daily living

13  ("ADLs"), such as preparing meals, shopping, transportation, preparing and taking medication,

14  housekeeping, laundry, grooming, bathing, toileting, and others.

15      20.    Assisted living facilities are intended to provide a level of care appropriate for

16  those who are unable to live by themselves, but who do not have medical conditions requiring

17  more extensive nursing care and significant assistance with most of their ADLs.  Oakmont's

18  assisted living facilities also have Memory Care units, which serve individuals with dementia and

19  other cognitive disorders.

20      21.    In recent years, Oakmont has increasingly been accepting and retaining more

21  residents with conditions and care needs that were once handled almost exclusively in skilled

22  nursing facilities.  This has allowed it to increase not only the potential resident pool but also the

23  amount of money charged to residents and/or their family members.

24      22.    At Oakmont facilities, residents are charged a base rate, which includes room,

25  board, and basic maintenance, cleaning and laundry.  Oakmont assesses each resident before

26  admission and then again each year and/or whenever there is a change of the resident's condition.

27  By performing these assessments, Oakmont determines what additional services a resident needs,

28

1  such as assistance with ADLs. Each additional need correlates to a number of points, which

2  depend on how much more time Oakmont staff must spend caring for the resident and what type

3  of staff should perform the services. The total number of points is multiplied by a dollar amount

4  resulting in a monthly fee charge. Thus, the higher the points assessed, the more money

5  Defendant charges the resident.

6  <center>**Uniform Representations in Oakmont's Standardized Contracts**
**and Other Corporate Materials**</center>

7  23.    Defendant represents to residents, family members and the general public that the

8  Oakmont resident assessment system will be used to determine and then provide the amount of

9  caregiver time Oakmont has itself decided that residents require. The resident assessment is used

10  to determine the amount residents are charged for the services and care that Oakmont has

11  determined is necessary.

12  24.    Oakmont makes the affirmative representation to each resident in its standardized

13  contracts, specifically in Section 1.B of the Oakmont Residence and Services Agreement

14  "Residence Agreement") that it:

15  
16  > will provide YOU with personal assistance and care on an as needed basis.
> When You applied for admission to the Community, Oakmont's professional staff
17  > performed a comprehensive assessment of your needs ... Oakmont will perform
> reassessments in light of your changing needs to determine the services that You
> may require. You will receive the services appropriate to your individual need.
18  

19  25.    The Residence Agreement further provides in Section 24:

20  > Each service is assigned a number of points that take into account the time to
> perform the task, the average wage of the staff position performing the task, and
21  > the frequency of the task. The number of points is multiplied by a dollar point
> value ... to arrive at a monthly cost. If Levels of Care are utilized the number of
22  > points will be used to determine a Level which is assigned a monthly cost.

23  26.    Section 1.C. of the Residence Agreement represents that Oakmont will disclose to

24  each resident any changes to their "service package" after annual reassessments or reassessments

25  performed due to a change in condition.

26  27.    Appendix A to each Residence Agreement states that "Care fees are charged based

27  on assessment points for a resident in assisted living." Residents in the Memory Care units are

28  charged "based on care levels associated with each resident's individual assessment and the level

<center>8</center>
<center>CLASS ACTION COMPLAINT</center>

1  of their specific needs." For those residents, there are five levels that are assigned a range of

2  points (e.g., Level 1 is 0-75 points, Level 2 is 27-150 points, and so on) with a corresponding

3  monthly charge.

4    28.    Oakmont does not disclose anywhere in the Residence Agreement that these points,

5  or the resident assessment process from which the assigned points are derived, are totally

6  unrelated to the budgets for staffing at each facility.

7    29.    The Individualized Service Plan and Resident Assessment prepared for each

8  resident represents that staffing will be based on the point-value system through the resident

9  reassessment program. Specifically, the service plan assigns each task to a particular job category

10 (i.e. Care Provider, Health Services Director) and indicates how the need will be met *by staff*. For

11 example, under the category "Assistive Devices," a service plan might list the following need:

12 "Resident uses one assistive device such as a cane, walker, wheelchair, hospital bed, overlay

13 mattress or a fall mat." The "Task Description" listed is "Encourage and/or assist the resident

14 with using and cleaning the assistive device," and the "Responsible Party" listed is "Care

15 Provider." The corresponding Resident Assessment assigns five (5) points for this service.

16 Oakmont adds fewer points to the total when a service requires less staff time. For example, a

17 resident whose listed need is "Resident has Diabetes. Self Manages glucose monitoring," may be

18 assessed only one (1) point because the only staff time involved is "Assess ability to self-monitor

19 glucose levels" as opposed to the more time-intensive task of monitoring glucose levels

20 throughout the day. These statements underline the obvious—care can only be provided by

21 people/staff, and a resident who has additional needs requires additional staff time. The promise

22 of additional staff time is what allows Oakmont to charge these residents more.

23    30.    In a standardized brochure provided to prospective residents and their families,

24 Oakmont advertises that its "Wellness Center and full-time nurse are available to assist with all of

25 your daily needs." The same brochure also states, "Services are appropriately tailored to each

26 resident's needs and our professional staff provides individualized assistance 24-hours a day. Care

27 services are additional and based on a fee for service basis." The clear message to the consuming

28

1    public, including Plaintiff and the putative class, is that Oakmont will provide sufficient numbers

2    of trained staff to provide individualized care to each resident, and residents will pay only for the

3    care received.

4          31.     Because these representations are presented through form contracts and other

5    standardized corporate materials, potential and current residents of Oakmont facilities reasonably

6    understand them to be representations of the policies and procedures followed by Oakmont both

7    for determining the needs of facility residents and for allocating the resources necessary to ensure

8    sufficient numbers of trained staff in California facilities to meet those needs.

9          32.     Based on these representations, Plaintiffs, the putative class members, and the

10    general consuming public reasonably expect that Oakmont sets and modifies its budget in a

11    manner that ensures adequate numbers of trained and qualified staff are available to meet all

12    current resident needs based on their comprehensive needs assessments and the number and type

13    of staff hours Oakmont has itself determined are necessary to satisfy those needs.

14                      **Oakmont's Non-Disclosure and Concealment**

15          33.     Contrary to the express and implied representations in the Oakmont standardized

16    contract and other uniform written statements, Oakmont does not use the resident assessment

17    system or assessment points to determine staffing or set staffing budgets at its facilities. Oakmont

18    does not disclose this material fact from the residents, their family members, and the general

19    public.

20          34.     Plaintiffs are informed and believe, and on that basis allege, that Oakmont has the

21    capability to determine, to the minute, the number and type of staff required to meet the aggregate

22    care points promised to residents. With its resident assessment system, Oakmont can calculate the

23    number and type of staff needed by a facility for the population or group of residents therein

24    viewed as a whole on any given shift based on the evaluated needs and assessed points of

25    residents. While Defendant uses this resident assessment system to set and charge monthly rates,

26    it does not use the resident assessment system to set budgets that ensure its facilities have the

27

28

1  number and type of staff available to provide the necessary services identified in residents'

2  assessments.

3      35.    Each year, Oakmont's corporate headquarters sets budgets, including labor

4  budgets, and operating income targets for each facility to meet desired profit margins. On

5  information and belief, as reflected in various corporate policies and procedures, Oakmont directs

6  its Executive Directors ("EDs") that their paramount concern should be staying within their pre-

7  determined budgets so that Oakmont can meet or exceed operating income targets, regardless of

8  the impact on the care and staffing needs of facility residents. EDs of Oakmont facilities may not

9  increase their budgets without approval from corporate headquarters. Job postings for facility

10  Executive Directors on Oakmont's website state that the ED must "[a]ssure[] implementation of

11  all operating and financial controls required under company policy . . . [and] [c]onsider[] all

12  expenditures within the constraints of budget." The ED is also "[r]esponsible for the annual

13  budget and financial performance of the community, operating within the approved budget,

14  meeting or exceeding established outcomes and company's targeted operating income."

15  https://www.ziprecruiter.com/jobs/oakmont-senior-living-431f7b3f/executive-directors-luxury-

16  senior-communities-throughout-california-

17  a3e22307?same_org_id=1&source=ziprecruiter_companyjobs_list_us, last visited September 12,

18  2017).

19      36.    On information and belief, Oakmont gives EDs and other divisional and regional

20  managers a disincentive to request more resources for staffing, including more caregiver positions,

21  training hours, or increases in salaries, because under corporate compensation policies, they can

22  only receive a bonus if they meet earnings targets set in advance by corporate headquarters. Some

23  EDs attempt to bridge the gap between residents' assessed needs and available staff hours by using

24  outside agencies to hire contract caregivers to fill in as needed on a temporary basis. But these

25  caregivers often provide substandard care because they are untrained and unfamiliar with

26  Oakmont's policies and practices, as well as the individualized needs of each resident. Further,

27

28

<div align="center">11</div>

1    EDs who regularly hire contract caregivers also run the risk of exceeding their operating budgets,

2    and, consequently, foregoing their bonuses and eventually losing their jobs.

3        37.    Former Oakmont employees and current and former residents confirm that there are

4    seldom enough staff in each facility to meet residents' needs, a problem that is compounded by a

5    high degree of staff turnover.  Because of this turnover, new staff are constantly cycling through,

6    and many positions remain unfilled for long periods of time.  Staff who have worked in the facility

7    longer end up shouldering more of the workload, including training new staff, and become

8    overwhelmed with tasks, causing them to make mistakes or fail to provide services to all residents

9    who require them.  Moreover, training that must be provided by law for both new and veteran staff

10   is often cut short or not given at all because staff are too busy and stretched too thin to take time

11   away from their daily responsibilities, and Oakmont does not approve overtime for staff to receive

12   training outside of their regularly scheduled shifts.

13       38.    Former employees also report that Oakmont does not build relief coverage into its

14   schedules to cover absences.  Caregivers are responsible for finding someone to cover their shifts

15   when they want to take days off, but since the facilities are usually short-staffed, there is typically

16   no one available to cover for them.  Consequently, some employees call in sick or do not show up

17   to work, and the position is not filled for the duration of that shift.

18       39.    As a result of Oakmont's failure to use its resident assessment system care points in

19   allocating staffing resources to each facility, there are not enough trained caregivers to provide

20   necessary services to residents on a consistent basis.  Further, because Oakmont's failure to use its

21   residential assessment system for staffing decisions results in insufficient numbers of trained staff

22   in each facility, Oakmont's residents run the continuing risk of not having their care needs met and

23   of suffering frustration, pain, discomfort, humiliation, and/or injury from inadequate care and

24   supervision.

25       40.    The consequences of Oakmont's policy and standard operating procedure of

26   prioritizing profit over care by using pre-determined and inflexible staffing budgets designed to

27   maximize revenue are significant.  They include, but are not limited to:  resident falls and injuries,

28

1  injuries left untreated, unexplained injuries, elopements, slow or no responses to resident call
2  buttons, failures to assist with toileting resulting in incontinence, inconsistent incontinence care
3  resulting in residents sitting in soiled and/or wet briefs for long periods of time, urinary tract
4  infections, dehydration, residents assaulting other residents, medication errors, and inadequate
5  grooming and hygiene assistance.

6                   **The Misrepresented and Concealed Facts Are Material**

7        41.    Defendant's misrepresentations and the facts it does not disclose are material to the
8  reasonable consumer. An important and significant factor in choosing an Oakmont facility is the
9  availability of trained staff to consistently provide the services identified as needed in
10 individualized assessments. A policy and practice of providing sufficient numbers of adequately
11 trained staff as determined through comprehensive assessments of residents' care needs, such as
12 the system Oakmont represents it uses, is likely to ensure that residents' care needs are met and
13 will be met in the future.

14       42.    Oakmont knows that prospective residents consider the availability of trained staff
15 sufficient to address each resident's needs when choosing an assisted living facility. Each
16 Oakmont facility website represents that "[s]ervices are appropriately tailored to each resident's
17 needs and professional staff provides individualized assistance 24 hours a day." (See, e.g.,
18 "Continuum of Care", http: //www.fountaingrovelodge.com/, last visited on September 12, 2017.)
19 The website also represents that Oakmont "residents experience peace of mind knowing Oakmont
20 offers a 24-hour care staff to assist with all of your daily living needs in the privacy of your own
21 home." (See, e.g., http: //oakmontofvillacapri.com/about-us/, last visited on September 12, 2017.)

22       43.    Oakmont's promise to provide the care services (through facility staff) that each
23 resident requires as calculated by the resident assessments conducted by Oakmont is material to
24 prospective residents and their family members. Further, residents (and their family members)
25 reasonably expect that Oakmont will provide the overall number and type of trained staff
26 sufficient to meet all of the assessed needs of all facility residents. The availability of trained staff
27 sufficient to provide the care necessary to meet assessed resident needs is a substantial factor (and
28

                                            13

1   often the most important factor) in deciding to enter an assisted living facility. The named

2   plaintiffs would not have agreed to enter or place their family members into Oakmont facilities, if

3   they had known that, although Defendant would charge them based on the staffing associated with

4   their assessed care points, Defendant would use pre-determined labor budgets for staffing and

5   those budgets would remain static despite the aggregate results of residents' assessments and

6   related care points. Likewise, members of the putative class would in all reasonable probability

7   not have entered Oakmont's facilities if they had known that Oakmont did not and does not use its

8   resident assessment system and the care points generated by it when allocating expenditures for

9   staffing at its facilities.

10       44.    This is true even for residents who currently are practically independent. These

11   residents choose an assisted living facility as opposed to remaining at home or moving into an

12   independent living community because they wish to "age in place." They may not need

13   significant assistance with the activities of daily living initially upon admission, but they expect to

14   become more dependent as they age and do not want to move yet again when that happens.

15   Oakmont represents that its facilities offer a "continuum of care" to provide a range of services,

16   from independent living to the availability of a full-time nurse onsite, to meet residents' needs as

17   they age and require more care.

18       45.    A key factor for these residents in selecting Oakmont is that trained staff will be

19   available to provide the care services that Oakmont itself has determined are necessary to meet

20   assessed residents' needs, both now and as those needs, and corresponding care services fees,

21   increase.

22       46.    Oakmont has a duty to disclose to the consuming public that resident assessments

23   and assigned care points are not used to set staffing budgets at Oakmont facilities because of,

24   among other things, the inherent and substantial safety risk to current and future residents from

25   Oakmont's conduct, particularly as Defendant serves a vulnerable population that needs

26   assistance. The non-disclosure is material because Oakmont knows that its conduct risks the

27   safety of its residents. Yet, Oakmont has failed to disclose and actively conceals from residents,

28

1  prospective residents, and their family members the true facts about its corporate policy and
2  practice of prioritizing profit over resident care.

### Barriers to Moving Out

4      47.      Defendant's misrepresentations affect not only the decision of residents to enter an
5  Oakmont facility, but also the decision to stay there.

6      48.      In choosing assisted living in general and an Oakmont facility in particular, the
7  resident forgoes other options such as his or her former home, a senior community, or other
8  facilities where the resident can try to build a new community. Once in a facility, there are
9  significant financial, physical, emotional, and other burdens for the residents that are triggered if
10  they terminate residency, including impacts such as "transfer trauma." Oakmont is aware of these
11  burdens, and makes the representations described herein with the knowledge that it will be
12  difficult for residents to leave its facilities once they are enticed to enter based on its
13  misrepresentations.

14      49.      After luring residents into the facility through its misrepresentations and misleading
15  statements, Oakmont increases residents' care points during re-assessments and does not
16  consistently provide copies of those assessments to the residents. Residents often do not become
17  aware that their care points have increased until they receive an invoice that charges them more for
18  care services. Oakmont's invoices do not identify the number of care points or specific care
19  services that will or have been provided. Oakmont's billing practices and failures to disclose its
20  assessments and care points obfuscate its staffing practices by making it difficult for residents to
21  compare what services they are paying for against what services staff are providing to them.

22      50.      Oakmont thereby unjustly continues to profit from the original fraud by
23  perpetuating its misrepresentations and failures to disclose.

### Named Plaintiffs' Experiences at Oakmont Facilities

25  **Donald Lollock**

26      51.      Donald Lollock ("Mr. Lollock") has Parkinson's Disease and dementia, and lived
27  in the Memory Care unit at Oakmont of Villa Capri in Santa Rosa, California from June 2013 to
28

1  September 2016. He currently lives in another facility not affiliated with Defendant. Before

2  Mr. Lollock moved in, his wife, Kathy Lollock ("Mrs. Lollock"), toured the Villa Capri facility

3  and met with its executive staff. She relied on Oakmont's representations in choosing the facility

4  over others she considered.

5          52.     Oakmont provided Mrs. Lollock with a standard contract under which it promised

6  to provide certain core services in exchange for a monthly base rate. Additionally, the contract

7  stated that Oakmont would provide Mr. Lollock:

8          with personal assistance and care on an as needed basis. ... When You applied for
           admission to the Community, Oakmont's professional staff performed a
9          comprehensive assessment of your needs. Oakmont will perform reassessments
           in light of your changing needs to determine the services that You may require.
10         You will receive the services appropriate to your individual need.

11

12     The contract further provided:

13     Each service is assigned a number of points that take into account the time to
       perform the task, the average wage of the staff position performing the task, and
       the frequency of the task. The number of points is multiplied by a dollar point
14     value ... to arrive at monthly cost. If Levels of Care are utilized the number of
       points will be used to determine a Level which is assigned a monthly cost.
15

16         53.     On behalf of Mr. Lollock, as his power of attorney, Mrs. Lollock read and

17  reasonably understood Oakmont's representations in the contract to mean that Oakmont would

18  perform an assessment of her husband, assign him a certain number of points based on the services

19  he required, and charge him fees based on those points. She reasonably expected that Oakmont

20  staff would provide the services identified as necessary in the assessments, and that his points, and

21  related charges, would increase as he required more services from staff. She expected that

22  Oakmont would sufficiently staff the facility to provide the services for which Mr. Lollock would

23  be charged. Mrs. Lollock read and relied on the representations in the contract in making the final

24  decision to place Mr. Lollock in the Memory Care unit at Oakmont of Villa Capri.

25         54.     Mr. Lollock paid $3,532 for the first month's rent, $1,676 for the first month's care

26  fees, and a Community Fee of $5,000. Over the course of his stay, his fees increased to an

27  average of around $10,800 a month.

28

55.    Beginning in approximately December 2015, Mr. Lollock's family members began to observe that the Villa Capri facility was short-staffed. In January 2016, for example, during an evening shift, only one Oakmont caregiver was available in the Memory Care unit for more than a dozen residents with dementia who required assistance with feeding, toileting, ambulating, showering, and other activities of daily living. Managers would pull the caregivers from the Memory Care unit to work in the assisted living unit, and sometimes attempt to fill the staffing gaps in the Memory Care unit with contract caregivers who were not trained generally, let alone to care for persons with dementia, or familiar with the residents. Mr. Lollock suffered from a deep gash on his leg after one of the contract caregivers attempted to transfer him. The constant changing of staff due to turnover and use of contract workers was confusing and alarming for residents with dementia.

56.    Oakmont did not consistently provide the continence and hygiene care that Mr. Lollock required and that he paid for. Staff did not take him to the toilet every two hours as he required, and Mrs. Lollock frequently discovered her husband in urine soaked pants. When he was prescribed an antibiotic that gave him diarrhea, staff did not consistently take him to the toilet immediately after meals as he required to avoid soiling his pants. He paid for showers three times a week and was unable to clean himself after bowel incontinence episodes, but Mrs. Lollock sometimes found Mr. Lollock with feces crusted around his groin. He suffered from terrible rashes as a result. One night the only available caregiver to assist Mr. Lollock was much smaller than he, and Mrs. Lollock had to assist the caregiver in transferring Mr. Lollock to the toilet and in performing hygiene tasks.

57.    Oakmont staff sometimes left Mr. Lollock alone and unsupervised for long periods of time. Mrs. Lollock arrived at the facility unexpected on one occasion to find Mr. Lollock sliding almost entirely out of his wheelchair. She found him on another occasion napping in his recliner without his fall alarm and the door to his room closed. Mr. Lollock has difficulty using his call pendant, and leaving him alone in this way made it nearly impossible for him to call for help or for staff to find him if he fell or had an emergency. Another time Mrs. Lollock was

1   dismayed to find her husband on the floor.  In May 2016, Mr. Lollock had a broken rib that

2   Oakmont could not explain.

3        58.     Mrs. Lollock notified Oakmont managers on several occasions in 2016 that she was

4   concerned about the inadequate care provided to her husband.  She also notified them that, despite

5   her concerns, it would be too stressful for Mr. Lollock to move.  Most of the time, in response,

6   Oakmont reassured her that her concerns would be addressed.  Knowing that a move would be

7   extremely disruptive for her husband and likely accelerate his decline, Mrs. Lollock was torn

8   about transferring Mr. Lollock from the facility.  In June 2016, however, Oakmont managers

9   pressured Mrs. Lollock into moving her husband out of the facility, which she did as soon as a bed

10  became available in his current facility.

11                              **Abdulwafi Khan**

12       59.     Abdulwafi Khan ("Mr. Khan") had dementia and lived in the Memory Care unit at

13  Oakmont of Mariner Point in Alameda, California from October 30, 2015 until he died on

14  December 11, 2016.  His daughter, Zareen Khan ("Ms. Khan"), chose Oakmont of Mariner Point

15  over other facilities after touring the facility, reviewing the marking materials, and meeting with

16  the marketing staff who promised that her father's needs would be met.

17       60.     Oakmont provided Ms. Khan with a standard contract under which it promised to

18  provide certain core services in exchange for a monthly base rate.  Additionally, the contract stated

19  that Oakmont would provide Mr. Khan:

20              with personal assistance and care on an as needed basis. ... When You
                applied for admission to the Community, Oakmont's professional staff
21              performed a comprehensive assessment of your needs.  Oakmont will
                perform reassessments in light of your changing needs to determine the
22              services that You may require.  You will receive the services appropriate
                to your individual need.
23

24  The contract further provided:

25              Each service is assigned a number of points that take into account the time
                to perform the task, the average wage of the staff position performing the
26              task, and the frequency of the task.  The number of points is multiplied by
                a dollar point value ... to arrive at monthly cost.  If Levels of Care are
27              utilized the number of points will be used to determine a Level which is
                assigned a monthly cost.
28

                                          18
                              CLASS ACTION COMPLAINT

61.     On behalf of Mr. Khan, as his power of attorney, Ms. Khan read and reasonably understood Oakmont's representations in the contract to mean that Oakmont would perform an assessment of her father, identify the services he needed, provide the services, and charge her for the services provided. She reasonably expected that Oakmont would ensure that enough trained staff were available to provide the needed services. Ms. Khan read and relied on the representations made in the contract in making the final decision to admit her father to Oakmont of Mariner Point.

62.     At the time of move-in, Mr. Khan paid a prorated amount of $1,567 for the first month's rent. He also paid a Community Fee of $6,500. Thus, the total amount he paid upon move-in was $8,067.

63.     Not long after her father moved in, Ms. Khan noticed that there were not enough staff to supervise and regularly engage with her father and other residents. Oakmont promised that staff would provide activities to its residents throughout the week, but the "activities" were mainly watching television and playing bingo, facilitated by a machine (not staff) that called out the numbers. Sometimes when Ms. Khan arrived at the facility, she could not find her father. When she asked caregivers where he was, they did not know and would have to search the facility room-by-room to find him. She saw that her father's roommate regularly pulled out his catheter, and that no staff checked on him to replace it. Ms. Khan received calls repeatedly from Oakmont because staff found her father on the floor after unwitnessed falls in various locations throughout the facility and could not say how long he might have been waiting for someone to find and help him up off the floor. Oakmont increased Mr. Khans's care fees due to his falls, but did not provide increased services in exchange for those fees.

64.     Oakmont sent Mr. Khan to the emergency room alone approximately five or six times and did not always follow its own procedures to timely notify Ms. Khan. Ms. Khan would arrive at the emergency room to find her father agitated, confused, and distressed, because he was alone and did not understand where he was and why he was there. Despite knowing that Oakmont's practice of sending Mr. Khan and other residents to the hospital unattended

CLASS ACTION COMPLAINT

1  traumatized those residents, Oakmont staff told Ms. Khan that that there were not enough

2  caregivers to accompany its residents on emergency room visits.

3      65.    Oakmont did not bathe Mr. Khan according to his care plan; he often spent weeks

4  without a bath or shower.  When Ms. Khan asked staff why they were not bathing her father, they

5  claimed he refused.  However, it was not clear what, if any, interventions staff attempted to try to

6  bathe Mr. Khan.  Towards the end of his life, Mr. Khan's insurance paid for an outside hospice

7  agency to bathe him.  Oakmont consistently refused to reduce the care fees for bathing even when

8  it provided this service very rarely, if at all, to Mr. Khan.

9      66.    Mr. Khan received substandard care from the contract caregivers frequently

10 assigned to the Memory Care Unit.  For example, he paid for and required a diabetic diet, and the

11 only meat he ate was seafood.  But Ms. Khan witnessed contract caregivers provide her father with

12 fruit juice and chicken soup, both prohibited due to his health condition and/or religious beliefs.

13     67.    Although Oakmont was not providing the services paid for by Mr. Khan, his

14 dementia would have made it traumatic for him to move to another facility.  He had connected

15 with some of the few long-term caregivers on staff, and that consistency, as well as the familiar

16 surroundings, was necessary for his mental health to remain stable.  Ms. Khan thought it would be

17 better to work with staff to improve her father's care, and staff always reassured her that her father

18 would be taken care of when she brought concerns to their attention.  Mr. Khan died while on

19 hospice care in the facility.

20                          **Frank Pearson**

21     68.    Frank Pearson is a current resident of Oakmont of Mariner Point in Alameda,

22 California.  He and his wife, Charmaine Pearson, moved to Oakmont of Mariner Point in June

23 2015, soon after it was built.  Before they moved in, they visited Oakmont's nearby facility,

24 Oakmont of Cardinal Point, reviewed Oakmont's marketing materials, and met with Oakmont

25 executive staff during a Oakmont-hosted luncheon at an Oakland restaurant on November 1, 2014.

26 During the luncheon, Oakmont staff told the Pearsons and other prospective residents that

27 Oakmont of Mariner Point would have nurses on site and plenty of caregivers to meet their needs.

28

CLASS ACTION COMPLAINT

1    After considering all of Oakmont's representations, including those about staffing, the Pearsons

2    paid a deposit of $2,000 to hold an apartment at Oakmont of Mariner Point when construction was

3    completed.

4        69.    Oakmont provided the Pearsons with a standard contract on or around June 9, 2015

5    under which it promised to provide certain core services in exchange for a monthly base rate.

6    Additionally, the contract stated that Oakmont would provide Mr. Pearson:

7        with personal assistance and care on an as needed basis. ... When You applied for
         admission to the Community, Oakmont's professional staff performed a
8        comprehensive assessment of your needs. Oakmont will perform reassessments
         in light of your changing needs to determine the services that You may require.
9        You will receive the services appropriate to your individual need.

10   The contract further provided:

11       Each service is assigned a number of points that take into account the time to
         perform the task, the average wage of the staff position performing the task, and
12       the frequency of the task. The number of points is multiplied by a dollar point
         value ... to arrive at monthly cost. If Levels of Care are utilized the number of
13       points will be used to determine a Level which is assigned a monthly cost.

14       70.    Mr. Pearson read and reasonably understood Oakmont's representations in the

15   contract to mean that Oakmont would use the resident assessments to determine staffing levels

16   such that he and other residents would receive the staff time needed to provide the care promised

17   in the assessments and service plans. He reasonably expected that if his care needs increased,

18   Oakmont staff would spend more time caring for him. Mr. Pearson read and relied on the

19   representations made in the contract in making the final decision to enter Oakmont of Mariner

20   Point.

21       71.    At the time of move-in, Mr. Pearson was charged a pro-rated amount for the first

22   month's rent ($5,790), a pro-rated amount for the first month's care fees ($308), and a non-

23   refundable pet deposit of $1,000. Thus, the total amount he paid to enter Oakmont was $7,098.

24   Mr. Pearson currently pays $8,369 for rent, and his care fees have ranged from an additional $105

25   to $1,092 a month.

26       72.    Within the first few months of moving in, Mr. Pearson began having trouble

27   receiving the care he needs from staff. Mr. Pearson was provided with a call-button to alert staff

28

<center>21</center>

<center>CLASS ACTION COMPLAINT</center>

1    when he needs them, and it is not uncommon for staff to take 45 minutes to respond when he

2    pushes it. Also, many of the care providers are small and do not have the strength to assist Mr.

3    Pearson in the shower one-on-one, but there are not enough staff available to provide him with a

4    two-person assist. Mrs. Pearson, who moved into the facility in part because of back problems,

5    typically helps Mr. Pearson shower, with the care provider, because the only available care

6    provider does not have the strength to do it alone. On one occasion, Mrs. Pearson had to reach

7    into the shower and grab Mr. Pearson, with the assistance of the care provider, to keep Mr.

8    Pearson from falling. The Pearsons have also noticed that the care providers are often rushed and

9    do not complete care tasks because they have so many residents under their care. In addition, the

10   Pearsons have observed that despite an increase in the number of residents who use wheelchairs

11   and require more assistance, the number of staff has remained the same.

12       73.    Although the Pearsons are dissatisfied with Oakmont, it is too hard for them to

13   move to another facility. Due to their age and impairments, it would be overwhelming, not to

14   mention expensive, to find another facility, pack, move and unpack all of their belongings. They

15   do not wish to burden their families, many of whom live in other states, by asking for help. Mr.

16   Pearson's health is fragile, and Mrs. Pearson fears the detrimental impact a move would have on

17   it.

18                                   **Jo Ella Nashadka**

19       74.    Jo Ella Nashadka is a current resident of Oakmont of Mariner Point in Alameda,

20   California. She moved to Oakmont of Mariner Point in June 2015. Before she moved in, her son,

21   Lance Anderson, toured the facility, reviewed Oakmont's marketing materials, and met with

22   Oakmont marketing staff. After considering all of Oakmont's representations, Mr. Anderson paid

23   a deposit of $2,000 in May 2015 on behalf of his mother to hold an apartment at Oakmont of

24   Mariner Point.

25       75.    Oakmont provided Mr. Anderson with a standard contract on or around June 9,

26   2015 under which it promised to provide certain core services in exchange for a monthly base rate.

27   Additionally, the contract stated that Oakmont would provide Ms. Nashadka:

28

> with personal assistance and care on an as needed basis. ... When You applied for admission to the Community, Oakmont's professional staff performed a comprehensive assessment of your needs. Oakmont will perform reassessments in light of your changing needs to determine the services that You may require. You will receive the services appropriate to your individual need.

The contract further provided:

> Each service is assigned a number of points that take into account the time to perform the task, the average wage of the staff position performing the task, and the frequency of the task. The number of points is multiplied by a dollar point value ... to arrive at monthly cost. If Levels of Care are utilized the number of points will be used to determine a Level which is assigned a monthly cost.

76.     Mr. Anderson reviewed the representations in the contract and reasonably understood them to mean that Oakmont would perform assessments of his mother, and based on those assessments, assign her a certain number of care points. He understood that Oakmont would charge his mother for each care point assessed and those care points would reflect the amount of time staff would spend providing services to mother. He reasonably expected that Oakmont would ensure sufficient numbers of trained staff to provide the services his mother required and paid for. Mr. Anderson read and relied on Oakmont's representations in the contract in making the final decision to admit Ms. Nashadka into Oakmont of Mariner Point.

77.     At the time of move-in, Ms. Nashadka was charged a Community Fee of $2,000 and a pro-rated amount for the first month's rent ($3,633). Thus, the total amount she paid to enter Oakmont was $5,633. Ms. Nashadka currently pays $5,127 for rent, and her care fees have ranged from an additional $241 to $4,380 a month.

78.     Within the first several months, Ms. Nashadka began telling Mr. Anderson about problems related to understaffing, including that staff was not responding to her call-button when she pressed it for help. In approximately November 2015, for example, Ms. Nashadka called her son distressed in the middle of the night because she was recuperating from a broken shoulder after a fall and staff would not respond to her call button to help her turn on the light in her apartment and ambulate to the toilet. Alone and in pain in the dark, she was forced to urinate in her bed. Mr. Anderson complained to the executive director the next morning, who reassured him the problem would be addressed, but staff still fail to consistently respond to his mother's call

1  button within a reasonable amount of time. Ms. Nashadka felt and continues to feel afraid of

2  being dependent on staff that are not consistently available to help her.

3      79.    Mr. Anderson has also noticed that staff does not consistently provide the services

4  for which Oakmont is charging his mother. Specifically, staff often fail to provide assistance with

5  toileting and transferring, even though Oakmont represented in service plans that these services

6  were required and charges Ms. Nashadka accordingly. As a result, Ms. Nashadka must perform

7  these daily activities unassisted. In October 2015, Mr. Anderson discovered his mother alone on

8  the floor after a fall, where she had been waiting at least 30 minutes for staff to help her. After

9  this fall, Oakmont began charging her for "fall management," but the health services director

10 could not reasonably explain to Mr. Anderson what services staff were providing in exchange for

11 those fees. Ms. Nashadka has fallen at least twice more since she began paying for "fall

12 management." Ms. Nashadka is also paying for staff to escort her throughout the facility, but staff

13 does not come to her room to escort her for meals and she instead uses her walker unassisted.

14     80.    Mr. Anderson has considered moving Ms. Nashadka out of Oakmont of Mariner

15 Point, but has decided against it because he is concerned how another move might impact her

16 health. She only just moved to Oakmont from Pennsylvania a little over two years ago, and she

17 has since been transferred back and forth from a skilled nursing facility to rehabilitate from her

18 broken shoulder. Each move has been stressful and disruptive to Ms. Nashadka's physical and

19 mental health.

20                          **Jane Burton-Whitaker**

21     81.    Jane Burton-Whitaker is a former resident of Oakmont of Mariner Point from

22 February 16, 2016 until June 15, 2017. She has multiple sclerosis and uses a motorized scooter.

23 Before moving into Oakmont, Ms. Burton-Whitaker toured the facility, met with the Executive

24 Director, and reviewed Oakmont's marketing materials. Oakmont represented to her that there

25 would be enough staff in the facility to take care of her needs.

26

27

28

82.    Oakmont provided Ms. Burton-Whitaker with a standard contract under which it

promised to provide certain core services in exchange for a monthly base rate. Additionally, the

contract stated that Oakmont would provide Ms. Burton-Whitaker:

> with personal assistance and care on an as needed basis. ... When You
> applied for admission to the Community, Oakmont's professional staff
> performed a comprehensive assessment of your needs. Oakmont will
> perform reassessments in light of your changing needs to determine the
> services that You may require. You will receive the services appropriate
> to your individual need.

The contract further provided:

> Each service is assigned a number of points that take into account the time
> to perform the task, the average wage of the staff position performing the
> task, and the frequency of the task. The number of points is multiplied by
> a dollar point value ... to arrive at monthly cost. If Levels of Care are
> utilized the number of points will be used to determine a Level which is
> assigned a monthly cost.

83.    Ms. Burton-Whitaker read and reasonably understood Oakmont's representations in

the contract to mean that Oakmont staff would perform an assessments of her needs and assign her

a certain number of care points based on those needs, and that those care points would reflect the

frequency and type of services she required from staff to meet those needs. She reasonably

expected that as her needs increased, her points would increase because she required more care

from staff, and she would pay more for those increased levels of care. She further expected that

Oakmont would ensure the facility had the staffing resources necessary to provide the services for

all of the residents in the facility based on their assessment results. Ms. Burton-Whitaker read and

relied on Oakmont's misrepresentations and misleading statements, including those in its

standardized contract, in making the final decision to enter Oakmont of Mariner Point.

84.    At the time of move-in, Ms. Burton-Whitaker paid approximately $5,000 for the

first month's rent, and a Community Fee of $600. Thus, the total amount she paid upon move-in

was approximately $5,600.

85.    After the first six months, Ms. Burton-Whitaker noticed that she did not

consistently receive all of the services that Oakmont promised to provide in her resident

1   assessments.  For example, she paid Oakmont approximately $270 a month for assistance with her

2   urinary catheter, but staff came to change the catheter bag only once a day when it required

3   changing several times a day.  Ms. Burton-Whitaker paid Oakmont approximately $153 a month

4   to provide "skin checks" up to three times a day, but she is not aware of *any* skin checks

5   performed by staff, let alone up to three times a day.  She paid Oakmont approximately $50 a

6   month for "coordination of care by Community nurse" with an outside provider, but Ms. Burton-

7   Whitaker handled her own care with outside providers and was not aware of Oakmont providing

8   any services in this regard.

9        86.    Staff did not always timely respond to Ms. Burton-Whitaker's call button.

10  Sometimes she waited up to 45 minutes before staff responded, and other times staff did not

11  respond at all and Ms. Burton-Whitaker had to leave her room to find staff herself.  She witnessed

12  staff fail to respond to residents who pushed their call button for help in the dining room and

13  searched the facility for staff to help them.  In early June 2017, at approximately 10 p.m., another

14  resident came to Ms. Burton-Whitaker's room because her bed frame had collapsed and staff were

15  not responding to her call button.  Ms. Burton-Whitaker also pushed her call button and went

16  searching for staff when they did not respond.  She searched the second and third floors of the

17  facility and could not find any staff.  Ms. Burton-Whitaker then called the main phone number for

18  the facility and reached a staff member in the Memory Care Unit on the first floor.  Approximately

19  45 minutes after Ms. Burton-Whitaker first pushed her call-button, a staff member arrived to help

20  the resident.

21       87.    Ms. Burton-Whitaker decided to leave Oakmont of Mariner Point because she was

22  frustrated with its failure to deliver the services for which she was being charged.  She was also

23  afraid that Oakmont's failure to adequately staff the facility was jeopardizing her safety, and staff

24  would not be available to help if she had a medical emergency.

25                              **CLASS ALLEGATIONS**

26       88.    The Named Plaintiffs bring this action as a class action pursuant to Cal. Code of

27  Civ. Proc. section 382 as set forth below.

28

89. This action is brought on behalf of the named Plaintiffs and all similarly situated persons, and/or the successors-in-interest to the estates of similarly situated persons, who resided or reside at one of the California assisted living facilities owned and/or operated by Oakmont under the Oakmont name from September 13, 2013, through the present (the "Class Period"), and who contracted with Oakmont for services for which Oakmont was paid money.

90. Excluded from the above-referenced class are the officers, directors, and employees of Defendant, and any of Defendant's shareholders or other persons who hold a financial interest in Defendant. Also excluded is any judge assigned to hear this case (or any spouse or family member of any assigned judge), or any juror selected to hear this case.

91. This action is brought as a class action and may properly be so maintained pursuant to Cal. Code of Civ. Proc section 382 and applicable case law. In addition to injunctive relief, this action seeks class wide damages based on Defendant's misrepresentations and misleading statements and material omissions alleged herein. This action does not seek recovery for personal injuries, emotional distress, or bodily harm that may have been caused by Defendant's conduct alleged herein.

92. <u>Impracticability of Joinder (Numerosity of the Class)</u>. Members of the class are so numerous that their individual joinder herein is impracticable. The precise number of members of the class and their addresses are presently unknown to Plaintiff. Defendant currently owns and/or operates approximately 23 assisted living facilities in California. The number of residents at those facilities during the class period likely exceeds 4,000 individuals. The precise number of persons in the class and their identities and addresses may be ascertained from Defendant's records.

93. <u>Questions of Fact and Law Common to the Class</u>. Numerous important common questions of law and fact exist as to all members of the class and predominate over the questions affecting only individual members of the class. These common legal and factual questions include without limitation:

(a) whether Defendant has violated and continues to violate the Consumer Legal Remedies Act, California Civil Code section 1770 et seq., ("the CLRA") by falsely

27

1   representing that Oakmont uses its resident assessment system and the care points generated by it

2   to determine and provide staffing at its California assisted living facilities, when, in fact,

3   Defendant does not and has no intention to do so;

4        (b)    whether Defendant has violated and continues to violate the CLRA by

5   promising residents that it will provide care and services when Defendant knows that its standard

6   operating procedure and corporate policy of using pre-determined and static budgets to staff its

7   facilities, without regard to the results generated by its resident assessment system, precludes it

8   from providing its residents with all of the care they have been promised and places all residents at

9   an inherent and significant risk that they will not receive the services they have paid for on any

10   given day;

11        (c)    whether Defendant's misrepresentations, misleading statements, and

12   omissions regarding the budgets for staffing as alleged herein were and are material to the

13   reasonable consumer;

14        (d)    whether a reasonable consumer would be likely to be deceived by

15   Defendant's misrepresentations, misleading statements, or material omissions;

16        (e)    whether by making the misrepresentations, misleading statements, and

17   material omissions alleged in this Complaint, Defendant has violated and continues to violate the

18   CLRA;

19        (f)    whether by making the misrepresentations, misleading statements, and

20   material omissions alleged in this Complaint Defendant violated and continues to violate

21   California Business & Professions Code sections 17200, et seq. ("UCL");

22        (g)    whether Defendant had exclusive knowledge of material facts not known or

23   reasonably accessible to the Plaintiffs and the class;

24        (h)    whether the Plaintiffs, the Class and the consuming public were likely to be

25   deceived by the foregoing concealment and omission;

26

27

28

CLASS ACTION COMPLAINT

1          (i)      whether the Plaintiffs, the Class and the consuming public have a

2   reasonable expectation that Defendant will use its resident assessment system to determine the

3   budgets for staffing at its facilities;

4          (j)      whether Defendant's misrepresentations, its misleading statements, its

5   failures to disclose, and its concealment of its true policies, procedures, and practices regarding

6   how its staffs its facilities violated the CLRA and the UCL;

7          (k)      whether Defendant has engaged and continues to engage in a pattern and

8   practice of unfair and deceptive conduct in connection with the management, administration and

9   operation of its California assisted living and memory care facilities;

10         (l)      whether Defendant has violated and continues to violate the UCL by

11  violating the CLRA and California W&I Code section 15610.30 during the Class Period;

12         (m)      whether Defendant has committed financial elder abuse under California

13  W&I Code section 15610.30 by taking, secreting, appropriating, obtaining and/or retaining money

14  from elders and dependent adults for a wrongful use and/or with the intent to defraud them;

15         (n)      whether Plaintiffs and the members of the Class have sustained injury;

16         (o)      whether Plaintiffs and the members of the Class are entitled to damages,

17  and the nature of such damages; and,

18         (p)      whether Plaintiffs and the members of the Class are entitled to restitution,

19  declaratory and injunctive relief and/or other relief, and the nature of such relief.

20         94.      **Typicality.**  The claims of the Named Plaintiffs are typical of the claims of the

21  Class.  As alleged above, Defendant misrepresented to Plaintiffs and the class members and/or

22  their family members that Defendant uses its resident assessment system to determine the care

23  services to be provided by facility staff and to assess and bill residents for corresponding care

24  points.  The resident assessment system and care points generated by it allow Defendant to

25  determine and provide the aggregate staffing Defendant has determined is necessary to meet the

26  assessed needs of its residents, but in fact, Defendant does not use this critical information in

27  budgeting for or determining staffing at its California facilities.  Rather, Defendant has a policy of

28

1  setting a fixed budget for staffing, regardless of the results generated by its resident assessment
2  system, which results in residents' not receiving all of the care they have paid for and/or being
3  subjected to the inherent risk that, on any given day, facility staffing will be insufficient to provide
4  the promised care for all residents. Further, as alleged above, Defendant has failed to disclose and
5  concealed this material fact from the Named Plaintiffs and the members of the proposed class.
6  Plaintiffs' claims are typical of the claims of the proposed class in the following ways: 1)
7  Plaintiffs are members of the proposed class; 2) Plaintiffs' claims arise from the same uniform
8  corporate policies, procedures, practices, and course of conduct on the part of Defendant; 3)
9  Plaintiffs' claims are based on the same legal and remedial theories as those of the proposed class
10  and involve similar factual circumstances; 4) the injuries suffered by the Named Plaintiffs are
11  similar to the injuries suffered by the proposed class members; and 5) Plaintiffs seek a common
12  form of relief for themselves and the members of the class.

13      95.    Adequacy. The Named Plaintiffs are adequate representatives of the class on
14  whose behalf this action is prosecuted. Their interests do not conflict with the interests of the
15  class. Also, they have retained competent counsel with extensive experience in class action and
16  senior care litigation and who will prosecute this action vigorously.

17      96.    Predominance. With respect to Plaintiffs' claims under the CLRA, the UCL, and
18  the Elder Abuse Act, class certification is appropriate because questions of law or fact common to
19  class members predominate over any questions affecting only individual members of the proposed
20  class.

21      97.    Superiority. Moreover, a class action is superior to other methods for the fair and
22  efficient adjudication of the controversies raised in this Complaint because:

23          (a)    individual claims by the class members would be impracticable because the
24  costs of pursuing such claims would far exceed what any individual class member has at stake;

25          (b)    relatively little individual litigation has been commenced over the
26  controversies alleged in this Complaint, and individual class members are unlikely to have an
27  interest in separately prosecuting and controlling individual actions;

28

1          (c)      the concentration of litigation of these claims in one forum will achieve

2    efficiency and promote judicial economy;

3          (d)      the proposed class is manageable, and no difficulties are likely to be

4    encountered in the management of this class action that would preclude its maintenance as a class

5    action;

6          (e)      the proposed class members are readily identifiable from Defendant's own

7    records; and,

8          (f)      prosecution of separate actions by individual members of the proposed class

9    would create the risk of inconsistent or varying adjudications with respect to individual members

10   of the proposed class that would establish incompatible standards of conduct for Defendant.

11       98.    Without a class action, Defendant will likely retain the benefit of its wrongdoing

12   and will continue in its illegal course of conduct which will result in further damages to Plaintiffs

13   and the proposed class.

14

15                                  **FIRST CLAIM**

16   **CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (Cal. Civ. Code § 1750 _et seq._)**

17       99.    Plaintiffs refer to, and incorporate herein by reference, all preceding paragraphs.

18       100.   Plaintiffs and the class members are "senior citizens" and/or "disabled persons" as

19   defined in California Civil Code section 1761(f) and (g). They are also "consumers" as defined in

20   California Civil Code section 1761(d).

21       101.   Defendant is a "person" as defined under California Civil Code section 1761(c).

22   The assisted living and memory care services provided by Defendant constitute "services" under

23   California Civil Code section 1761(b). The agreement by Plaintiffs and the putative class

24   members to provide new resident services fees and monthly payments to Defendant in exchange

25   for assisted living and memory care services constitutes a "transaction" under California Civil

26   Code section 1761(e).

27

28

                                    31

102.    In its uniform resident contracts presented to prospective residents and their family members, Defendant represented and continues to represent that Oakmont will provide care services (through its facility staff) that are sufficient to meet the needs of each resident, as determined by Oakmont's resident assessment system and confirmed in the care points assigned to each resident. That same representation is made in Oakmont's re-assessments of residents and other standardized corporate materials. As alleged herein, these uniform corporate representations are false and misleading, and are likely to deceive the reasonable consumer.

103.    Contrary to Oakmont's uniform misrepresentations and misleading statements, Oakmont does not use its resident assessment system or consider resident assessment points in setting budgets to ensure sufficient numbers of trained staff to meet promised care levels, but instead uses predetermined budgets designed to meet corporate profit goals. Oakmont facilities must stay within these predetermined budgets for staffing that rarely, if ever, changes, despite changes in the assessed personal care levels of the current residents. Oakmont does not disclose and actively conceals this corporate policy and practice from current and prospective residents and their family members.

104.    The named Plaintiffs and/or their legal representatives and power of attorneys and the putative class members considered material Oakmont's promise to provide care services (through its facility staff) that would be sufficient to meet the needs of each resident, as determined by Oakmont's resident assessment system. If the named Plaintiffs and/or their legal representatives had known the true facts, they would not have agreed to enter or to place their loved ones in an Oakmont facility. If the putative class members had known the true facts, they would in all reasonable probability not have agreed to enter Oakmont or to place their loved ones in an Oakmont facility.

105.    The facts that Oakmont misrepresents, fails to disclose and actively conceals are material and are likely to deceive the reasonable consumer. Consumers choose an assisted living facility because they need care and/or wish to age in place as their care needs change. Residents and their family members consider the overall staffing levels provided by the assisted living

1  facility they select to be of great importance. The use of a system such as the one Oakmont

2  represents it uses, which ensures adequate staffing at the facilities by basing staffing decisions on

3  resident assessments and personal care needs, is also, therefore, of great importance to residents

4  and their family members and is a material factor in their decision to choose Oakmont and to pay

5  Oakmont the amounts of money that it charges for occupancy and services.

6        106.   Residents and their family members would consider material Defendant's uniform

7  corporate policy and practice of not using its resident assessment system and the staffing numbers

8  generated by it to set staffing at its facilities. They would consider material Defendant's policy

9  and practice of not using the assessed resident needs and corresponding care points to set staffing

10  budgets. Plaintiffs and the putative class members could not reasonably have been expected to

11  learn or discover these non-disclosed facts, and in fact, Oakmont affirmatively concealed them.

12        107.   Oakmont has violated and continues to violate Cal. Civ. Code §.1770 in at least the

13  following respects: (a) in violation of section 1770(a)(5), Oakmont has misrepresented, failed to

14  disclose and concealed the true characteristics and/or quantities of services provided at its

15  California facilities; (b) in violation of section 1770(a)(7), Defendant has misrepresented, failed to

16  disclose and concealed the true standard, quality and/or grade of services provided at its California

17  facilities; and (c) in violation of section 1770(a)(14), Defendant has represented that the agreement

18  signed by residents and/or their representatives, and under which they pay their monthly rates,

19  confers on residents the right to reside in a facility that provides staffing based on the amount of

20  time its own resident assessment system has determined is necessary to provide the care services

21  for which residents are charged, when in fact, Defendant does not use its resident assessment

22  system and the care points generated by it in allocating resources for staffing at its facilities.

23        108.   These misrepresentations, misleading statements, material omissions, acts, and

24  practices by Defendant are and were intended to induce and lure elderly and dependent adult

25  residents and their family members into agreeing to be admitted to or to place their family

26  members in Defendant's facilities and to pay new resident services fees and monthly rates based

27  on Defendant's resident assessment system and assessed care points.

28

109.    Defendant made the written misrepresentations and misleading statements alleged herein through various uniform means of communication, including without limitation, the admission agreement, subsequent agreements based on re-assessments of the resident, resident care plans, standardized corporate marketing and promotional materials, Defendant's corporate website, and other written corporate materials disseminated to the public in connection with Defendant's services. These representations were made directly to the named Plaintiffs, putative class members and their family members and/or representatives by Oakmont in its standard resident admission contract and reinforced by the uniform means of communication listed above.

110.    In addition to its affirmative misrepresentations, Defendant failed to disclose and concealed from Plaintiffs, the putative class members, and their family members that it does not use its resident assessment system to determine or provide facility staffing at levels sufficient to meet the assessed care needs of facility residents, but instead allocates resources for staffing based on predetermined and static budgets, regardless of changes in the aggregate assessed care needs of the facility residents and regardless of whether the residents' assessed care needs are being met.

111.    Oakmont had exclusive and superior knowledge of material facts not known to the named Plaintiffs, the proposed class members, or the general public at the time of the subject transactions and did not disclose these material facts.

112.    Oakmont had exclusive and superior knowledge of its corporate policy and practice of ignoring its resident assessment system and the care points generated by it in determining the budgets for its facilities. Further, Plaintiffs allege on information and belief that Defendant's officers, directors, and managers were advised by their own staff that Oakmont facilities did not have enough trained staff to consistently meet residents' needs. Oakmont also knew that its failure to ensure sufficient numbers of trained staff based on the amount of time that Oakmont had itself determined was necessary to provide the care and services for which it charged its residents posed a substantial health and safety risk to the named Plaintiffs and the proposed class members. Oakmont intentionally concealed, suppressed, and/or failed to disclose the true facts with the intent to defraud the named Plaintiffs and putative class members. The named Plaintiffs and the

34
CLASS ACTION COMPLAINT

1 putative class members did not know these material undisclosed facts and could not reasonably

2 have been expected to discover them.

3      113.    As a direct and proximate result of the Defendant's conduct, Plaintiffs and the

4 putative class members suffered actual damages. Specifically, Plaintiffs and the class members

5 paid money to Defendant, in the form of the new resident fee (called a "Community Fee"), their

6 initial monthly fees, and additional monthly fees, paid in exchange for residency and services in a

7 facility that was falsely represented to be staffed based on Oakmont's residential assessment and

8 care point system. Plaintiffs and the class members paid a premium for the misrepresented

9 services, and would not, in all reasonably probability, have entered Oakmont's facilities and made

10 payments to Oakmont had they known the truth about Oakmont's policies and practices of

11 determining its budgets for staffing its assisted living facilities. Members of the class continue to

12 pay monthly fees based on their assessed care points.

13      114.    As a further direct and proximate result of Defendant's failure to ensure sufficient

14 numbers of trained staff at its facilities as represented, *i.e.* based on residents' needs as determined

15 through its comprehensive assessments, Plaintiffs and the class members have been forced to

16 reside in facilities that do not have enough trained staff to meet their care needs, as determined by

17 Oakmont itself. As a result of Oakmont's policy of staffing its facilities according to pre-

18 determined and inflexible labor budgets, regardless of increases in the overall care needs and

19 assessed points of current residents, it is not possible for the needs of all residents to be met, and

20 there is a substantial likelihood that each resident, at any given time, will not receive the care

21 Oakmont has determined necessary and promised to provide. Plaintiffs and the proposed class

22 members also face the substantial risk that they will suffer physical injuries from such lack of care

23 and/or supervision.

24      115.    Plaintiffs sent Defendant a notice to cure under California Civil Code section

25 1782(a), which was received by Defendant on May 8, 2017. Defendant has not corrected or

26 remedied the violations alleged in the notice and herein.

27

28

1       116.   Accordingly, Plaintiffs and the class members are entitled to actual damages and

2  restitution in an amount to be proven at trial.

3       117.   Plaintiffs and the proposed class members are also entitled to not less than $1,000

4  in statutory damages pursuant to California Civil Code section 1780(a). Further, Plaintiffs and

5  other class members are also each entitled to statutory damages of up to $5,000 pursuant to

6  California Civil Code section 1780(b). Plaintiffs and many other class members are seniors and/or

7  disabled persons as defined by California Civil Code section 1761(f) and (g) and have sustained

8  substantial economic harm as a result of Defendant's conduct. Oakmont knew that its conduct

9  negatively impacted seniors and disabled persons.

10       118.   Plaintiffs additionally seek treble damages under California Civil Code section

11  3345, punitive damages, reasonable attorneys' fees and costs, and all other relief the Court deems

12  just and proper. Excluded from Plaintiffs' request are damages related to any personal injuries,

13  emotional distress, or wrongful death suffered by any member of the class.

14       119.   Oakmont's conduct presents a continuing threat of substantial harm to the public.

15  Among other things, Defendant continues to induce elderly and vulnerable citizens to enter its

16  facilities, despite the fact that Oakmont does not use resident assessments and assigned care points

17  to determine facility staffing. The risk of harm to the class members from Defendant's conduct is

18  substantial. Accordingly Plaintiffs seek an injunction that requires that Defendant immediately

19  cease the CLRA violations alleged herein, and to enjoin it from continuing to engage in any such

20  acts or practices in the future. Additionally, Plaintiffs seek an injunction requiring Defendant to

21  disclose to Plaintiffs, the putative class members, and the consuming public that the results of

22  resident assessments and care points are not used to set staffing budgets, and that Oakmont instead

23  uses pre-determined and static labor budgets, regardless of changes in the overall needs and

24  assessed care points of current residents. Plaintiffs and the class also seek an injunction

25  prohibiting Defendant from basing its care fees on care points that correspond to the amount of

26  staff time Defendant represents is necessary to provide the required services, when Defendant does

27

28

CLASS ACTION COMPLAINT

1  not, as a matter of corporate policy and procedure, use those numbers in setting staffing levels at
2  its facilities.

3  ## SECOND CLAIM FOR UNLAWFUL, UNFAIR AND DECEPTIVE BUSINESS
4  ## PRACTICES (Cal. B&P Code § 17200 *et seq.*)

5     120.   Plaintiffs refer to, and incorporate herein by this reference, all preceding
6  paragraphs.

7     121.   Defendant has engaged in unlawful business acts and practices. Such acts and
8  practices constitute unfair business practices in violation of California Business and Professions
9  Code section 17200 *et seq.*

10    122.   In particular, Defendant has engaged in unlawful business acts and practices by
11  violating numerous laws, statutes, and regulations including, without limitation:

12         (a)    Systematically and uniformly representing to the residents of its assisted
13  living facilities in California, their family members, and the public that Oakmont uses its resident
14  assessment system and the care points generated by it to determine and provide facility staffing,
15  when in fact, it did not and never intended to do so, in violation of California Business &
16  Professions Code section 17500, et seq. and California Civil Code section 1770, et seq.; and

17         (b)    Taking, secreting, appropriating, obtaining, and retaining the funds of elders
18  and dependent adults for a wrongful use and/or with the intent to defraud in violation of California
19  W&I Code section 15610.30.

20    123.   By virtue of the conduct alleged herein, Defendant has also engaged in fraudulent
21  business practices. Members of the general public (including without limitation persons admitted
22  to and/or residing in Oakmont's California assisted living and memory care facilities during the
23  Class Period, and their family members and/or representatives) have been and are likely to be
24  deceived by Defendant's misrepresentations and failures to disclose as alleged herein.

25    124.   The acts and practices of Defendant also constitute unfair business acts and
26  practices within the meaning of California Business & Professions Code section 17200, *et seq.*, in

27

28

1    that the conduct alleged herein is immoral, unscrupulous and contrary to public policy, and the

2    detriment and gravity of that conduct outweighs any benefits attributable to such conduct.

3         125.    Defendant's misrepresentations, misleading statements, material omissions, acts,

4    and practices were intended to induce and lure elderly and dependent adult residents and their

5    family members into agreeing to be admitted to or to place their family members in Defendant's

6    facilities and to pay a new resident fees and monthly rates to live in an assisted living facility that

7    determines and provides staffing according to the staff time and type of staff Defendant has

8    determined is necessary to provide the services identified in its resident assessments.

9         126.    Defendant made these misrepresentations and misleading statements through

10    various uniform means of written corporate communications, including without limitation, the

11    admission agreement, subsequent agreements based on re-assessments of the resident, resident

12    care plan, marketing and promotional materials, Defendant's corporate website and other materials

13    disseminated to the public from its corporate headquarters in connection with Defendant's

14    services. These representations were made directly to the named Plaintiffs, the proposed class

15    members and their family members and/or representatives by Defendant in its standard resident

16    contracts and reinforced by the uniform means of communication listed above.

17         127.    In addition to its affirmative misrepresentations that Oakmont uses its resident

18    assessment system to determine and provide facility staffing in accordance with residents'

19    assessed needs, Defendant failed to disclose to Plaintiffs, the putative class members, and their

20    family members that Defendant does not use its resident assessment system to set or determine the

21    budgets for facility staffing but instead maintains predetermined and static budgets for facility

22    staffing levels regardless of changes in the overall assessed care needs of current residents.

23         128.    Defendant had exclusive and superior knowledge of material facts not known to the

24    named Plaintiffs, the putative class members or the general public at the time of the subject

25    transactions and did not disclose these material facts.

26         129.    Oakmont had exclusive and superior knowledge of its corporate policy and practice

27    of ignoring the assessed care points and corresponding amounts of staff service time generated by

28

1   its resident assessment system in determining the staffing budgets for each facility.  Oakmont also

2   knew that its failure to provide staffing based on the amount of time that Oakmont had itself

3   determined was necessary to provide the care and services for which residents were charged posed

4   a substantial health and safety risk to the named Plaintiffs and class members.  Oakmont

5   intentionally concealed, suppressed, and/or failed to disclose the true facts with the intent to

6   defraud the named Plaintiffs and putative class members.  The named Plaintiffs and the putative

7   class members did not know these material undisclosed facts and could not reasonably have been

8   expected to discover them.

9        130.    As a direct and proximate result of Defendant's conduct, Plaintiffs, the class

10   members, and members of the general public (including without limitation persons admitted to

11   and/or residing in the facilities, and their family members and/or representatives) have been

12   harmed and continue to be harmed.  Among other things, they paid money to Defendant to enter

13   the facility and for services that were substandard to those promised by Defendant.  Accordingly,

14   Plaintiffs and the putative class members are entitled to restitution.

15        131.    Additionally, Plaintiffs seek an injunction that requires that Defendant immediately

16   cease acts of unlawful, unfair and fraudulent business acts or practices as alleged herein, and to

17   enjoin Defendant from continuing to engage in any such acts or practices in the future.

18        132.    Plaintiffs and the putative class members also seek reasonable attorneys' fees, costs

19   and expenses, and all other remedies permitted by law.

20        **THIRD CLAIM FOR ELDER FINANCIAL ABUSE (Cal. W&I Code § 15610.30)**

21        133.    Plaintiffs refer to, and incorporate herein by this reference, all preceding

22   paragraphs.

23        134.    Plaintiffs and the putative class members are and at all times were "elders" as

24   defined under California W&I Code section 15610.27 and/or "dependent adults" as defined under

25   California W&I Code section 15610.23.

26        135.    Defendant entered into a standard agreement with the named Plaintiffs, by and

27   through their power of attorneys, the putative class members and/or their personal representatives.

28

1   In these agreements, Defendant represented that Oakmont determines and provides staffing at its

2   assisted living facilities sufficient to meet the needs of its residents as determined by Oakmont's

3   assessments and confirmed in care points used to calculate resident charges. Defendant made this

4   promise in exchange for new resident fees and monthly payments it received from the named

5   Plaintiffs and the putative class members. Yet Defendant did not and had no intention of

6   complying with its obligations under the contract. Defendant did not intend to and does not use its

7   resident assessment system to set or provide staffing at its facilities. Rather, it has a policy and

8   practice of using pre-determined budgets to allocate staffing expenditures that do not change with

9   increases in resident care needs. This policy and practice precludes Oakmont from providing

10   facility residents with all of the care Oakmont has promised them and for which they are paying

11   Oakmont.

12       136.   Defendant knew or should have known that such conduct would likely be harmful

13   to Plaintiffs and the putative class members.

14       137.   Defendant knew or should have known that Plaintiffs and the putative class

15   members had a right to the funds used to pay new resident community fees and monthly fees to

16   Defendant.

17       138.   As such, Defendant took, secreted, appropriated, obtained, and retained the funds of

18   Plaintiffs and the putative class members for a wrongful use and/or with the intent to defraud.

19       139.   Defendant's conduct was despicable, fraudulent, reckless, and carried out with a

20   willful and conscious disregard for the rights and safety of Plaintiffs and the members of the

21   putative class.

22       140.   Accordingly, Plaintiffs and the putative class seek an injunction requiring

23   Defendant to disclose to Plaintiffs, the putative class members and the consuming public that

24   Oakmont does not use its resident assessment or assessed care points to set or provide staffing at

25   its facilities, but instead allocates staffing resources based on fixed labor budgets, which do not

26   change regardless of increases in the overall assessed care needs of current residents. Plaintiffs

27   and the class also seek an injunction prohibiting Defendant from basing its care fees on care points

28

1  that correspond to the amount of staff time Defendant represents is necessary to provide the

2  required services, when Defendant does not, as a matter of corporate policy and procedure, use

3  those numbers in setting staffing levels at its facilities.

4      141.    Plaintiffs and the putative class members also seek compensatory damages,

5  reasonable attorneys' fees, costs and expenses, punitive damages, treble damages pursuant to

6  California Civil Code section 3345, and all other remedies permitted by law. Plaintiffs do not

7  seek damages related to any personal injuries, emotional distress, or wrongful death suffered by

8  any member of the class.

### PRAYER

10  WHEREFORE, Plaintiffs pray for judgment as follows:

11      1.    For a Court order certifying that the action may be maintained as a class action;

12      2.    For statutory damages;

13      3.    For actual damages according to proof, excepting any damages for personal injury,

14          emotional distress, and/or wrongful death suffered by the named Plaintiffs or any

15          class member;

16      4.    For restitution and any other monetary relief permitted by law;

17      5.    For reasonable attorneys' fees, costs and expenses;

18      6.    For treble damages pursuant to California Civil Code section 3345;

19      7.    For punitive damages;

20      8.    For pre-judgment and post-judgment interest, according to law;

21      9.    For a public injunction requiring that Defendant immediately cease acts that

22          constitute unlawful, unfair and fraudulent business practices, and violations of the

23          Consumer Legal Remedies Act, Business and Professions Code section 17200 *et*

24          *seq.*, and the Elder Financial Abuse statute as alleged herein, and to enjoin

25          Defendant from continuing to engage in any such acts or practices in the future;

26

27

28

CLASS ACTION COMPLAINT

10. For a public injunction requiring Defendant to disclose to the putative class members and the consuming public that Oakmont does not use its resident assessment or care points generated by it to set or provide staffing at its facilities;

11. For a public injunction prohibiting Defendant from charging fees based on care points that correspond to the amount of staff time Defendant represents is necessary to provide the required services, unless and until Defendant uses those numbers in setting and providing staffing levels at its facilities;

12. For such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiffs demand a jury trial on all issues so triable.

Dated: September 13, 2017

Kelly Knapp

Kathryn A. Stebner, State Bar No. 121088
Kelly Knapp, State Bar No. 252013
George Kawamoto, State Bar No. 280358
STEBNER AND ASSOCIATES
870 Market Street, Suite 1212
San Francisco, CA 94102
Tel:    (415) 362-9800
Fax:    (415) 362-9801

Guy B. Wallace, State Bar No. 176151
Sarah Colby, State Bar No. 194475
Jennifer A. Uhrowczik, State Bar No. 302212
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS, LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel:    (415) 421-7100
Fax:    (415) 421-7105

Christopher J. Healey, State Bar No. 105798
DENTONS US LLP
4655 Executive Drive, Suite 700
San Diego, CA 92121
Tel:    (619) 235-3491
Fax:    (619) 645-5328

Michael D. Thamer, State Bar No. 101440
LAW OFFICES OF MICHAEL D. THAMER
12444 South Highway 3
Post Office Box 1568
Callahan, CA 96014-1568

42

1    Robert S. Arns, State Bar No. 65071
Julie C. Erickson, State Bar 293111
2    THE ARNS LAW FIRM
515 Folsom Street, 3rd Floor
3    San Francisco, CA 94105

4    W. Timothy Needham, State Bar No. 96542
JANSSEN MALLOY LLP
5    730 Fifth Street
Eureka, CA 95501

6    Attorneys for Plaintiff and the proposed Class

# EXHIBIT 2

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Kathryn Stebner (SBN 121088); Kelly Knapp (SBN 252013)<br>Stebner and Associates<br>870 Market Street, Suite 1212<br>San Francisco, CA 94102 | ENDORSED<br>FILED<br>ALAMEDA COUNTY |

TELEPHONE NO.: 415-362-9800        FAX NO.: 415-362-9801

ATTORNEY FOR *(Name):* Plaintiffs and the Proposed Class

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda

SEP 13 2017

STREET ADDRESS: 1225 Fallon Street

MAILING ADDRESS:

CITY AND ZIP CODE: Oakland, CA 94612

By_____ SUE PESKO

BRANCH NAME:

CASE NAME:
Donald Lollock, et al. v. Oakmont Senior Living, LLC, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402). | | RG17875110 |
| | | | | JUDGE:           DEPT: |

BY FAX

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [✓] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [✓] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [✓] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve         in other counties, states, or countries, or in a federal court
   c. [✓] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [✓] punitive

4. Number of causes of action *(specify):* Three

5. This case [✓] is   [ ] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 13, 2017

Kelly Knapp
*(TYPE OR PRINT NAME)*                                   ▷ _Kelly Knapp_
                                                          *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
      or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

1  Kathryn A. Stebner, State Bar No. 121088
   Kelly Knapp, State Bar No. 252013
2  George Kawamoto, State Bar No. 280358
   **STEBNER AND ASSOCIATES**
3  870 Market Street, Suite 1212
   San Francisco, CA  94102
4  Tel: (415) 362-9800
   Fax: (415) 362-9801

5  Guy B. Wallace, State Bar No. 176151
   Sarah Colby, State Bar No. 194475
6  Jennifer A. Uhrowczik, State Bar No. 302212
   **SCHNEIDER WALLACE COTTRELL**
7  **KONECKY WOTKYNS, LLP**
   2000 Powell Street, Suite 1400
8  Emeryville, CA 94608
   Tel:   (415) 421-7100
9  Fax:   (415) 421-7105

10 Christopher J. Healey, State Bar No. 105798
   **DENTONS US LLP**
11 600 West Broadway, Suite 2600
   San Diego, CA  92101-3372
12 Tel: (619) 235-3491
   Fax: (619) 645-5328
13

14 *Attorneys for Plaintiffs and the Proposed Class*

ENDORSED
FILED
ALAMEDA COUNTY

SEP 1 3 2017

SUE PESKO

By

BY FAX

15                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

16                          **COUNTY OF ALAMEDA**

17 | Donald Lollock, by and through his Guardian
   ad Litem, Kathleen Lollock; Zareen Khan as
18 Special Administrator for the Estate of
   Abdulwafi Khan; Frank Pearson; Jo Ella
19 Nashadka; and Jane Burton-Whitaker; on
   their own behalves, and on behalf of others
20 similarly situated,

21                     Plaintiffs,

22 vs.

23 Oakmont Senior Living, LLC, and Does 1 -
   100,
24
                       Defendants.
25

CASE NO.    R G 17 875 110

**DECLARATION OF FRANK PEARSON
PURSUANT TO CIV. CODE §1780(d)**

**JURY TRIAL DEMANDED**

26

27

28

I, Frank Pearson, hereby declare as follows:

1.     I am a named plaintiff in this action. I make this declaration in connection with a Complaint being filed in the Superior Court of the State of California, County of Alameda on behalf of myself and all others similarly situated.  If called to testify as to the information contained herein, I would and could competently do so.  The following is based on my own personal knowledge, except as to the information which is based on information and belief, which I believe to be true.

2.     Venue is proper in Alameda County under Cal. Civil Code section 1780, based on the facts, without limitation, that: Defendant conducts substantial business in this county, including but not limited to the management of Oakmont of Mariner Point and Oakmont of Cardinal Point; a portion of Defendant's liability arose in this county; and the acts upon which this action is based occurred in part in this county.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

This declaration was executed in Oakland, California on July 20, 2017.

By :  _____
FRANK PEARSON

1    DECLARATION OF FRANK PEARSON
     PURSUANT TO CIV. CODE SEC. 1780(d)

CIV-010

| | |
|---|---|
| ATTORNEY *(Name, State Bar number, and address)*:<br>Kelly Knapp (252013)<br>Stebner and Associates, PC<br>870 Market Street, Ste. 1212<br>San Francisco, CA 94102<br>TELEPHONE NO.: (415) 362-9800  FAX NO. *(Optional)*: (415) 362-9801<br>E-MAIL ADDRESS *(Optional)*: kelly@stebnerassociates.com<br>ATTORNEY FOR *(Name)*: Donald Lollock, Plaintiff | FOR COURT USE ONLY<br><br>ENDORSED<br>FILED<br>ALAMEDA COUNTY<br><br>SEP 1 3 2017<br><br>SUE PESKO<br><br>By_____ |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME:

PLAINTIFF/PETITIONER: Donald Lollock, b/t his GAL Kathleen Lollock

DEFENDANT/RESPONDENT: Oakmont Senior Living, LLC

| APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM---CIVIL<br>☑ EX PARTE | CASE NUMBER:<br>R G17875110 |
|---|---|

*NOTE: This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law or juvenile proceeding should use form FL-935. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use form DE-350/GC-100. An individual cannot act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.*

1. Applicant *(name)*:                                                              is
   a. ☐ the parent of *(name)*:
   b. ☐ the guardian of *(name)*:
   c. ☐ the conservator of *(name)*:                                                          BY FAX
   d. ☐ a party to the suit.
   e. ☐ the minor to be represented *(if the minor is 14 years of age or older)*.
   f. ☑ another interested person *(specify capacity)*:  Wife and Durable Power of Attorney for Donald Lollock

2. This application seeks the appointment of the following person as guardian ad litem *(state name, address, and telephone number)*:
   Kathleen Lollock
   8853 Oak Trail Court
   Santa Rosa, CA 95409 (707) 833-1350.

3. The guardian ad litem is to represent the interests of the following person *(state name, address, and telephone number)*:
   Donald Lollock
   6900 Foothill Ranch Road
   Santa Rosa, CA 95404 (707) 539-4992

4. The person to be represented is:
   a. ☐ a minor *(date of birth)*:
   b. ☑ an incompetent person.
   c. ☐ a person for whom a conservator has been appointed.

5. The court should appoint a guardian ad litem because:
   a. ☑ the person named in item 3 has a cause or causes of action on which suit should be brought *(describe)*:
   Consumer Legal Remedies Act (Civ. Code sec. 1750 et seq.), B&P Code sec. 17200 et seq., and
   Financial Elder Abuse, W&I Code sec. 15610.30 et. seq.

   ☐ Continued on Attachment 5a.

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-010 [Rev. January 1, 2008] | APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM---CIVIL | Code of Civil Procedure,<br>§ 372 et seq. |
|---|---|---|

CIV-010

| PLAINTIFF/PETITIONER: Donald Lollock, b/t his GAL Kathleen Lollock | CASE NUMBER: |
| DEFENDANT/RESPONDENT: Oakmont Senior Living, LLC | |

5. b. ☐ more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in Item 3 or any other person.

   c. ☑ the person named in item 3 has no guardian or conservator of his or her estate.

   d. ☑ the appointment of a guardian ad litem is necessary for the following reasons (specify):

   To protect the interests of a medically incompetent person.

   ☑ Continued on Attachment 5d.

6. The proposed guardian ad litem's relationship to the person he or she will be representing is:
   a. ☑ related (state relationship): Wife
   b. ☐ not related (specify capacity):

7. The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person. (If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed):

   ☐ Continued on Attachment 7.

Kelly Knapp
(TYPE OR PRINT NAME)                                      ▶ _Kelly Knapp_ (SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date: 7/24/2017

Kathleen Lollock
(TYPE OR PRINT NAME)                            x ▶ _Kathleen Lollock_ (SIGNATURE OF APPLICANT)

## CONSENT TO ACT AS GUARDIAN AD LITEM

I consent to the appointment as guardian ad litem under the above petition.
Date: 7/24/2017

Kathleen Lollock
(TYPE OR PRINT NAME)                            x ▶ _Kathleen Lollock_ (SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

## ORDER   ☑ EX PARTE

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that (name): Kathleen Lollock
is hereby appointed as the guardian ad litem for (name): Donald Lollock
for the reasons set forth in item 5 of the application.
Date:

_____
JUDICIAL OFFICER
☐ SIGNATURE FOLLOWS LAST ATTACHMENT

**APPLICATION AND ORDER FOR APPOINTMENT
OF GUARDIAN AD LITEM—CIVIL**

# ATTACHMENT 5d(1)

**ATTACHMENT OF KATHLEEN LOLLOCK IN SUPPORT OF
APPLICATION AND ORDER FOR APPOINTMENT OF
GUARDIAN AD LITEM – CIVIL**

I, Kathleen Lollock, declare as follows:

      1.     I am the wife of DONALD LOLLOCK. I make this Declaration based on my own personal knowledge and in support of this Application and Order for Appointment of Guardian Ad Litem—Civil. If called upon to testify, I could and would testify competently to the truth of the matters stated in this Declaration.

      2.     My home address is 8853 Oak Trail Court, Santa Rosa, California, 95409.

      3.     DONALD LOLLOCK resides at La Serenissima, 6900 Foothill Ranch Road, Santa Rosa, CA 95404.

      4.     My husband, DONALD LOLLOCK, is 82 years old. He is under the treatment of Dr. David Pastran, M.D., in Santa Rosa, California.

      5.     My husband lacks the capacity to prosecute a lawsuit without the appointment of a guardian ad litem. He cannot appreciate the rights, duties, and responsibilities created by, or affected by, his participation in a lawsuit. He is impaired in the areas of:

      a.     Alertness and attention: My husband has significant impairments in orientation to time. He is unable to consistently report the current month or year.

      b.     Information processing: My husband's short-term memory and immediate recall are significantly impaired. He is unable to remember, for example, what he ate during his last meal or what television show he watched the day before. His oral communication is limited to short sentences.

      6.     These deficits impair my husband's ability to fully understand and appreciate the consequences of his actions with regard to his duties and responsibilities as a class representative. He would not be able to fully process and store the information about the procedural status of this lawsuit and his responsibilities in relation to it. He would be unable to focus sufficiently to assist his attorneys in providing information and documentation necessary for this lawsuit and in response to any requests made by Defendant. Additionally, his active participation in this lawsuit without the appointment of a guardian ad litem would be emotionally difficult and mentally impossible for him.

DECLARATION OF KATHLEEN LOLLOCK., IN SUPPORT OF APPLICATION FOR APPOINTMENT OF GUARDIAN AD LITEM

7.    I visit my husband on a daily basis, with very rare exceptions, and am skilled at identifying and addressing his needs.

8,    I am willing to act as guardian ad litem for DONALD LOLLOCK to stop the unlawful and fraudulent practices of Oakmont Senior Living, LLC in falsely representing to the residents of assisted living facilities owned, leased, licensed, operated, administered, managed, directed, and/or controlled by it within the State of California that each resident will be provided the care services (through facility staff) that he or she needs as determined by the resident assessment conducted by facility personnel.  These are my husband's interests as well.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 28th day of June 2017, at Santa Rosa, California.

*Kathleen Lollock*

Kathleen Lollock

# ATTACHMENT 5d(2)

**DECLARATION OF DR. DAVID PASTRAN, M.D. (TREATING PHYSICIAN) IN SUPPORT OF APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM – CIVIL**

I, Dr. David Pastran, declare as follows:

1.   I am a board certified doctor of _FAMILY MEDICINE_.   I make this Declaration based on my own personal knowledge and in support of this Application for Appointment of Guardian Ad Litem regarding DONALD LOLLOCK.   If called upon to testify, I could and would testify competently to the truth of the matters stated in this Declaration.

2.   I am DONALD LOLLOCK'S primary physician.   I have been treating DONALD LOLLOCK since _June 27, 2014_.

3.   DONALD LOLLOCK is 82 years old and has advanced Parkinson's Disease and Vascular Dementia.   He resides at La Serenissima, 6900 Foothill Ranch Road, Santa Rosa, CA 95404.

4.   It is my professional opinion that DONALD LOLLOCK lacks the capacity to prosecute a lawsuit without the appointment of a guardian ad litem.   He cannot appreciate the rights, duties, and responsibilities created by, or affected by, his participation in a lawsuit.

5.   DONALD LOLLOCK suffers from the following deficits, which render him unable to prosecute this action without a guardian ad litem.

   a.   Alertness and attention:  He has impairments in orientation to time.

   b.   Information processing:  His short-term and long-term memory are significantly impaired.   He also has significant impairment in his immediate recall.

6.   The above deficits significantly impair DONALD LOLLOCK's ability to understand and appreciate the consequences of his actions with regard to his duties and responsibilities as a class representative.   He would be unable to fully process and store the information about the procedural status of this lawsuit and his responsibilities in relation to it.   He would be unable to focus sufficiently to assist his attorneys in providing information and documentation necessary for this lawsuit and in response to any requests made by Defendant. Additionally, his active participation in this lawsuit without the appointment of a guardian ad litem would be much more emotionally difficult for him than for someone without his limitations.

   I declare under penalty of perjury under the laws of the United States that the foregoing is

1  true and correct.

2        Executed on this ___29ᵀᴴ___ day of ___JUNE___ 2017, at ___Santa Rosa, CA___,

3  California.

4  _____

5        Dr. David Pastran

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28




20239846
**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Oakmont Senior Living, LLC, and Does 1 - 100

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Donald Lollock, by and through his Guardian ad Litem, Kathleen
Lollock; [ADDITIONAL PARTIES ATTACHED]

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

FILED
ALAMEDA COUNTY

SEP 1 3 2017

CLERK OF THE SUPERIOR COURT
By_____ Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER:<br>*(Número del Caso):* RG17875110 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

| | | | |
|---|---|---|---|
| DATE: **SEP 1 3 2017**<br>*(Fecha)* | Clerk, by<br>*(Secretario)* | | , Deputy<br>*(Adjunto)* |

Chad Finke

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):*   Oakmont Senior Living, LLC

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☒ other *(specify):*   Corporation Code 17701.16
4. ☑ by personal delivery on *(date):* 9/20/2017

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Donald Lollock, et al. v. Oakmont Senior Living, LLC, et al. | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☑ Plaintiff   ☐ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

Zareen Khan as Special Administrator for the Estate of Abdulwafi Khan; Frank Pearson; Jo Ella Nashadka; and Jane Burton-Whitaker; on their own behalves, and on behalf of others similarly situated

Page ___1___ of ___1___

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

### ADDITIONAL PARTIES ATTACHMENT
Attachment to Summons

┌ Stebner and Associates, A Professional ┐        ┌ Oaklmont Senior Living, LLC            ┐
  Law Corporation
  Attn: Stebner, Kathryn A.
  870 Market Street
└ Suite 1212                              ┘        └                                       ┘
  San Francisco, CA  94102____

---

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| Lollock | No. <u>RG17875110</u> |
|---|---|
| Plaintiff/Petitioner(s) | |
| VS. | |
| Oaklmont Senior Living, LLC | NOTICE OF HEARING |
| Defendant/Respondent(s) | |
| (Abbreviated Title) | |

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above-entitled action has been set for:

> Case Management Conference
> Complex Determination Hearing

You are hereby notified to appear at the following Court location on the date and time noted below:

Case Management Conference:
DATE: 10/17/2017   TIME: 03:00 PM   DEPARTMENT: 30
LOCATION: U.S. Post Office Building, Second Floor
            201 13th Street, Oakland

Complex Determination Hearing:
DATE: 11/28/2017   TIME: 03:00 PM   DEPARTMENT: 30
LOCATION: U.S. Post Office Building, Second Floor
            201 13th Street, Oakland

Pursuant to California Rules of Court, Rule 3.400 et seq. and Local Rule 3.250 (Unified Rules of the Superior Court, County of Alameda), the above-entitled matter is set for a Complex Litigation Determination Hearing and Initial Complex Case Management Conference.

Department 30 issues tentative rulings on DomainWeb (www.alameda.courts.ca.gov/domainweb). For parties lacking access to DomainWeb, the tentative ruling must be obtained from the clerk at (510) 268-5104. Please consult Rule 3.30(c) of the Unified Rules of the Superior Court, County of Alameda, concerning the tentative ruling procedures for Department 30.

Counsel or party requesting complex litigation designation is ordered to serve a copy of this notice on all parties omitted from this notice or brought into the action after this notice was mailed.

All counsel of record and any unrepresented parties are ordered to attend this Initial Complex Case Management Conference unless otherwise notified by the Court.

Failure to appear, comply with local rules or provide a Case Management Conference statement may result in sanctions. Case Management Statements may be filed by E-Delivery, by submitting directly to the E-Delivery Fax Number (510) 267-5732. No fee is charged for this service. For

further information, go to **Direct Calendar Departments** at
**http://apps.alameda.courts.ca.gov/domainweb**.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing must be
scheduled for hearing in Department 30.

If the information contained in this notice requires change or clarification, please contact the
courtroom clerk for Department 30 by e-mail at Dept.30@alameda.courts.ca.gov or by phone at
(510) 268-5104.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by
contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled
conference. Parties can make arrangements by calling (888) 882-6878, or faxing a service request
form to (888) 883-2946. This service is subject to charges by the vendor.

Failure to appear, comply with local rules or provide a Case Management Conference statement
may result in sanctions under Local Rule 3.90.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing (CDH)
must be scheduled in the same department as that hearing.

If the information contained in this notice requires change or clarification, please call the courtroom
clerk for the department where the CDH is scheduled.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by
contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled
conference. Parties can make arrangements by calling 1-888-882-6878, or faxing a service request
form to 1-888-882-2946. This service is subject to charges by the vendor.

Dated: 09/13/2017                    Chad Finke  Executive Officer / Clerk of the Superior Court

                                     By  *Michelle Bank*
                                                                    Digital
                                         _____
                                                          Deputy Clerk

---

### CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to
this cause.  I served this Notice by placing copies in envelopes addressed as shown hereon and then by
sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the
date stated below, in the United States mail at Alameda County, California, following standard court
practices.

          Executed on 09/14/2017.

                                     By  *Michelle Bank*
                                                                    Digital
                                         _____
                                                          Deputy Clerk

Stebner and Associates, A Professional
Law Corporation
Attn: Stebner, Kathryn A.
870 Market Street
Suite 1212
San Francisco, CA  94102____

Oaklmont Senior Living, LLC

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Lollock | No. RG17875110 |
| Plaintiff/Petitioner(s) | |
| VS. | NOTICE OF HEARING (AMENDED) |
| Oaklmont Senior Living, LLC | Case Management Conference on 10/17/2017 has been vacated and rescheduled. |
| Defendant/Respondent(s) (Abbreviated Title) | |

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above entitled action has been set for:
Case Management Conference

You are hereby notified to appear at the following Court location on the date and time noted below:

Case Management Conference:
DATE: 10/17/2017    TIME: 03:00 PM    DEPARTMENT: 23
LOCATION: Administration Building, Fourth Floor
                1221 Oak Street, Oakland

Failure to appear, comply with local rules or provide a Case Management Conference statement may result in sanctions under Local Rule 3.90.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing (CDH) must be scheduled in the same department as that hearing.

If the information contained in this notice requires change or clarification, please call the courtroom clerk for the department where the CDH is scheduled.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties can make arrangements by calling 1-888-882-6878, or faxing a service request form to 1-888-882-2946. This service is subject to charges by the vendor.

Dated: 09/14/2017

Chad Finke  Executive Officer / Clerk of the Superior Court

By _Lynette Ry_
Deputy Clerk

### CLERK'S CERTIFICATE OF MAILING
I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 09/14/2017.

By _____

Deputy Clerk

1  Kathryn A. Stebner, State Bar No. 121088
   Kelly Knapp, State Bar No. 252013
2  George Kawamoto, State Bar No. 280358
   **STEBNER AND ASSOCIATES**
3  870 Market Street, Suite 1212
   San Francisco, CA  94102
4  Tel:  (415) 362-9800
   Fax:  (415) 362-9801
5
   Guy B. Wallace, State Bar No. 176151
6  Sarah Colby, State Bar No. 194475
   Jennifer A. Uhrowczik, State Bar No. 302212
7  **SCHNEIDER WALLACE COTTRELL**
   **KONECKY WOTKYNS, LLP**
8  2000 Powell Street, Suite 1400
   Emeryville, CA 94608
9  Tel:    (415) 421-7100
   Fax:    (415) 421-7105
10
11 Christopher J. Healey, State Bar No. 105798
   **DENTONS US LLP**
12 600 West Broadway, Suite 2600
   San Diego, CA  92101-3372
13 Tel: (619) 235-3491
   Fax: (619) 645-5328
14
   [Additional Counsel listed on signatur page]
15
   *Attorneys for Plaintiffs and the Proposed Class*
16
                  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
17
                             **COUNTY OF ALAMEDA**
18
   Donald Lollock, by and through his Guardian | CASE NO. RG17875110
19 ad Litem, Kathleen Lollock; Zareen Khan as
   Special Administrator for the Estate of
20 Abdulwafi Khan; Frank Pearson; Jo Ella
   Nashadka; and Jane Burton-Whitaker; on
21 their own behalves, and on behalf of others
   similarly situated;
22
                        Plaintiffs,
23
      vs.
24
   Oakmont Senior Living, LLC, and Does 1 -
25 100,
26                     Defendants.

**FILED ALAMEDA COUNTY SEP 27 2017 CLERK OF THE SUPERIOR COURT By _____ Deputy**

BY FAX

**Date: October 17, 2017**
**Time: 3:00 p.m.**
**Dept: 23**

**CASE MANAGEMENT CONFERENCE STATEMENT**

27
28

1    Plaintiffs submit this case management conference statement without Defendant, and the

2  parties have not met and conferred, because Defendant has not yet appeared in this action.

3  **A. PLAINTIFFS' SUMMARY OF CASE**

4    Defendant Oakmont Senior Living ("Oakmont" or "Defendant") has engaged in a scheme

5  to defraud seniors and persons with disabilities by falsely representing in standard admission

6  contracts and other uniform statements that residents will receive care services determined by

7  needs assessments conducted by facility personnel. Undisclosed to residents or the public,

8  Oakmont does not use the assessments in setting the budgets for staffing, but instead uses pre-

9  determined and static budgets designed to maximize revenue. As a result, residents either fail to

10  receive promised services or are placed at substantial risk that such services will not be provided

11  in the future.

12    This putative class action was filed by Donald Lollock, by and through his guardian ad

13  litem, Kathleen Lollock; Zareen Khan as Special Administrator for the Estate of Abdulwafi Khan;

14  Frank Pearson; Jo Ella Nashadka; and Jane Burton-Whitaker; on behalf of themselves and others

15  similarly situated. Mr. Lollock was a resident of Oakmont of Villa Capri in Santa Rosa, California

16  from approximately June 2013 to September 2016. Abdulwafi Khan was a resident of Oakmont

17  of Mariner Point, in Alameda, California from October 30, 2015 to December 11, 2015. Frank

18  Pearson is a current resident of Oakmont of Mariner Point in Alameda, California who moved into

19  the facility on June 9, 2015. Jo Ella Nashadka is a current resident of Oakmont of Mariner Point

20  in Alameda, California who moved into the facility in June 2015. Joan Burton-Whitaker is a

21  former resident of Oakmont of Mariner Point in Alameda, California who resided at the facility

22  from February 16, 2016 until June 15, 2017.

23    When Plaintiffs Lollock, Khan, Pearson, Nashadka, and Burton-Whitaker (collectively

24  "Plaintiffs") entered Oakmont facilities, Oakmont represented in its standard contract and during

25  the admission process that a) each resident will receive the care that he/she requires; (b) the

26  facility's professional staff will determine the care required for each resident through the resident

27  assessment process; and (c) the amount of care needed by the resident will be translated into a

28

1   specific number of care points for which the resident will be charged on a monthly basis. Plaintiffs

2   and members of the putative class therefore reasonably expected that Oakmont will use its resident

3   assessment system and related care points to determine and provide sufficient staffing levels

4   necessary to ensure each resident receives the care he/she requires. They chose to enter Oakmont

5   in part because they relied on Oakmont's material representations that it would provide enough

6   staff to meet all of their needs.  However, Oakmont failed to disclose to Plaintiffs and members of

7   the proposed class that it does not consider the amount of time dictated by resident assessments

8   when it budgets for and provides staff at its facilities.

9       Plaintiffs allege that Defendant has misrepresented and failed to disclose material facts

10  regarding its resident assessment system and staffing levels in violation of sections 1770(a)(5),

11  1770(a)(7), and 1770(a)(14) of the Consumer Legal Remedies Act.  Plaintiffs also allege that

12  Defendant engages in unlawful, unfair, and fraudulent business acts and practices in violation of

13  California Business and Professions Code section 17200, et seq., and elder financial abuse in

14  violation of California W&I Code section 15610.30.

15      Plaintiffs seek public injunctive relief requiring that Defendant cease current and future

16  unlawful, unfair, and fraudulent business practices, and violations of the Consumers Legal

17  Remedies Act, Business and Professions Code, and the Elder Financial Abuse statute as alleged.

18  Plaintiffs further seek public injunctive relief requiring Defendant to disclose to the putative class

19  members and the consuming public that Oakmont does not use its resident assessment or care

20  points generated by it to set or provide staffing at its facilities.  Plaintiffs also seek a public

21  injunction prohibiting Defendant from charging fees based on care points that correspond to the

22  amount of staff time Defendant represents is necessary to provide the required services, unless and

23  until Defendant uses those numbers in setting and providing staffing levels at its facilities;

24      Plaintiffs also seek statutory and actual damages, treble damages, punitive damages,

25  restitution, and attorneys' fees and costs.  Because Plaintiffs do not know currently how many

26  class members exist, they cannot estimate damages at this time.

27  ///

28

CASE MANAGEMENT CONFERENCE STATEMENT

**B. NUMBER OF PARTIES**

The class and its representative are represented by six firms with experience litigating class actions alleging elder financial abuse by assisted living facilities and violations of the Consumers Legal Remedies Act. These firms are Stebner & Associates, LLC; Dentons US LLP; The Law Offices of Michael D. Thamer; Janssen Malloy LLP; Schneider Wallace Cottrell Konecky Wotkyns, LLP; and The Arns Law Firm. Stebner and Associates will serve as the liaison.

**C. AMENDED OR ADDITIONAL PLEADINGS**

Plaintiffs do not anticipate any amended pleadings at this time.

**D. CLASS DISCOVERY AND CLASS CERTIFICATION**

Plaintiffs will seek documents and other discovery, including depositions of persons most knowledgable, regarding Defendant's fees, services, staffing, budgets, resident assessment systems, resident information tracking, and other related topics.

Plaintiffs will seek additional documents related to resident assessment systems and staffing such as emails and memos, in electronic and searchable form. Plaintiffs have devised protocols regarding electronic discovery in other similar cases and will work with Defendant to create an agreeable stipulation and order.

Depending on the cooperation between the parties regarding discovery, Plaintiffs anticipate bringing their class certification motion in six to nine months. If acceptable to the Court, Plaintiffs propose that the Court set a status conference after the completition of initial discovery (approximately six months from Defendant's appearance), at which time the Court could set a briefing schedule and hearing date for class certificaton, if warranted based on discovery status.

**E. PROPOSED SCHEDULE**

**Since Defendant has not yet appeared, Plaintiffs request that the Case Management Schedule be rescheduled to 60 days after Defendant's first appearance.** As noted above, Plaintiffs hope to complete discovery necessary for class certification in six to nine months, but this depends on the cooperation of the parties.

Assuming appropriate cooperation from Defendant on discovery matters, Plaintiffs expect

1 | to file their motion for class certification in six to nine months from Defendant's appearance, and

2 | expect to be ready for trial within twelve months of the class certification hearing.

3 | **F.  CONFIDENTIALITY ISSUES**

4 | Plaintiffs do not anticipate any confidentiality issues.

5 | **G.  PROCEDURAL POSTURE OF CASE**

6 | 1.  Plaintiffs sent Defendant a notice to cure under California Civil Code § 1782(a), which

7 | was received by Defendant on May 8, 2017.  Defendant has not corrected or remedied the alleged

8 | violations.  Plaintiffs served Defendant with all pleadings on September 20, 2017.

9 | 2.  Plaintiffs do not anticipate any cross complaints.

10 | 3.  Plaintiffs do not know of any related actions.

11 | 4.  There are no jurisdictional or venue issues.

12 | 5.  Discovery issues are discussed above.

13 | 6.  There are no unresolved law and motion matters.

14 | 7.  Plaintiffs will participate in mediation with an an agreed-upon mediator.

15 | 8.  Plaintiffs do not seek severance of any issues for trial.

16 | 9.  Assuming trial occurs in mid to late 2018, no conflicts currently exist.

18 | Dated: September 27, 2017

Kathryn A. Stebner, State Bar No. 121088
Kelly Knapp, State Bar No. 252013
George Kawamoto, State Bar No. 280358
STEBNER AND ASSOCIATES
870 Market Street, Suite 1212
San Francisco, CA 94102
Tel:    (415) 362-9800
Fax:    (415) 362-9801

Guy B. Wallace, State Bar No. 176151
Sarah Colby, State Bar No. 194475
Jennifer A. Uhrowczik, State Bar No. 302212
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS, LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel:    (415) 421-7100
Fax:    (415) 421-7105

Christopher J. Healey, State Bar No. 105798
DENTONS US LLP
4655 Executive Drive, Suite 700
San Diego, CA 92121
Tel:    (619) 235-3491
Fax:    (619) 645-5328

Michael D. Thamer, State Bar No. 101440
LAW OFFICES OF MICHAEL D. THAMER
12444 South Highway 3
Post Office Box 1568
Callahan, CA 96014-1568

Robert S. Arns, State Bar No. 65071
Julie C. Erickson, State Bar 293111
THE ARNS LAW FIRM
515 Folsom Street, 3rd Floor
San Francisco, CA 94105

W. Timothy Needham, State Bar No. 96542
JANSSEN MALLOY LLP
730 Fifth Street
Eureka, CA 95501

Attorneys for Plaintiff and the proposed Class

CASE MANAGEMENT CONFERENCE STATEMENT

# Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Lollock<br><div align="right">Plaintiff/Petitioner(s)</div><br><div align="center">VS.</div><br><br>Oaklmont Senior Living, LLC<br><div align="right">Defendant/Respondent(s)</div><div align="center">(Abbreviated Title)</div> | No. <u>RG17875110</u><br><br>Tentative Case Management Order |

This Tentative Case Management Order is issued by Judge Brad Seligman on 10/13/2017.

ORDER re: CASE MANAGEMENT

The Court has ordered the following after review of the case, including timely filed Case Management Statements, without a conference.

FURTHER CONFERENCE

A further Case Management Conference is scheduled for 12/19/2017 at 03:00 PM in Dept. 23.

This tentative case management order will become the order of the Court unless counsel or self-represented party notifies the Court and opposing counsel/self-represented party by email not less than one court day prior to the CMC that s/he intends to appear in person at the CMC to discuss some aspect of the order, and specifies the nature of the party's concern. The court may be reached at Dept.23@alameda.courts.ca.gov.

Counsel and self-represented litigants are reminded to check the court's register of action before appearing at any case management conference at least two days before any scheduled appearance to determine if the court has issued a tentative case management order.  If published, this tentative case management order will become the order of the Court unless counsel or self-represented party notifies the Court and opposing counsel/self-represented party by email not less than one court day prior to the CMC that s/he intends to appear in person at the CMC to discuss some aspect of the order, and specifies the nature of the party's concern. (Please note that the Tentative Rulings postings on the website is for tentative rulings on law and motion matters and will not display tentative Case Management Orders. The tentative Case Management Orders are found in the Register of Action). The court may be reached at Dept.23@alameda.courts.ca.gov.

Plaintiff and Defense Counsel shall file Updated Case Management Statements (preferably joint) in compliance with CRC § 3.725, preferably on pleading paper rather than on Judicial Council Form CM-110,  no later than five (5) court days prior to the CMC. PARTIES ARE STRONGLY ENCOURAGED TO SERVE COURTESY COPIES ON THE COURT BECAUSE OF DELAYS IN SCANNING AS A RESULT OF BUDGET SHORTFALLS IN ALAMEDA COUNTY.

NOTICES

Counsel for Plaintiff(s) must forthwith serve a copy of this order on all counsel of record and self-represented parties, and file proof of service.

Any delay in the trial, caused by non-compliance with any order contained herein, shall be the subject of sanctions pursuant to CCP 177.5.

# EXHIBIT 3



**Secretary of State**
**Statement of Information**
(Limited Liability Company)

143 GT

| LLC-12 |

**FILED**
Secretary of State
State of California

OCT 13 2016

21|20|PC

This Space For Office Use Only

**IMPORTANT — Read instructions before completing this form.**

**Filing Fee - $20.00**

**Copy Fees** – Face Page $1.00 & .50 for each attachment page;
Certification Fee - $5.00

---

**1. Limited Liability Company Name**
Oakmont Senior Living LLC

| **2. 12-Digit Secretary of State File Number** | **3. State or Place of Organization** (only if formed outside of California) |
|---|---|
| 200032110122 | |

**4. Business Addresses**

| a. Street Address of Principal Office - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 9240 Old Redwood Hwy, Suite 200 | Windsor | CA | 95492 |

| b. Mailing Address of LLC, if different than Item 4a | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

| c. Street Address of **California** Office, if Item 4a is not in California - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | CA | |

**5. Manager(s) or Member(s)**

If no *managers* have been appointed or elected, provide the name and address of each *member*. At least one name **and** address must be listed. If the manager/member is an individual, complete Items 5a and 5c (leave Item 5b blank). If the manager/member is an entity, complete Items 5b and 5c (leave Item 5a blank). Note: The LLC cannot serve as its own manager or member. If the LLC has additional managers/members, enter the name(s) and addresses on Form LLC-12A **(see instructions).**

| a. First Name, if an individual - Do not complete Item 5b | Middle Name | Last Name | Suffix |
|---|---|---|---|
| William | P | Gallaher | |

| b. Entity Name - Do not complete Item 5a |
|---|
| |

| c. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 9240 Old Redwood Hwy, Suite 200 | Windsor | CA | 95492 |

**6. Agent for Service of Process**

Item 6a and 6b: If the agent is an **individual**, the agent must reside in California and Item 6a and 6b must be completed with the agent's name and California address. Item 6c: If the agent is a California Registered Corporate Agent, a current agent registration certificate must be on file with the California Secretary of State and Item 6c must be completed (leave Item 6a-6b blank).

| a. California Agent's First Name (if agent is not a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| William | P | Gallaher | |

| b. Street Address (if agent is not a corporation) - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 9240 Old Redwood Hwy, Suite 200 | Windsor | CA | 95492 |

| c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 6a or 6b |
|---|
| |

**7. Type of Business**

| a. Describe the type of business or services of the Limited Liability Company |
|---|
| Develop, lease, sell Senior Living Facilities |

**8. Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Joe | G | Lin | |

| b. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 9240 Old Redwood Hwy, Suite 200 | Windsor | CA | 95492 |

**9. The information contained herein, including any attachments, is true and correct.**

| 10/10/2016 | Marie-Helene Senhaux | Paralegal | *Marie-Helene Senhaux* |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

**Return Address (Optional)** (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address. This information will become public when filed. SEE INSTRUCTIONS BEFORE COMPLETING.)

| Name: | Marie-Helene Senhaux, Paralegal |
|---|---|
| Company: | Oakmont Senior Living |
| Address: | 9240 Old Redwood Hwy, Suite 200 |
| City/State/Zip: | Windsor, CA 95492 |

LLC-12 (REV 07/2016)    2016 California Secretary of State
www.sos.ca.gov/business/be